1999 UT 2

**STATE of Utah, Plaintiff and Appellee,**

v.

**William M. THOMAS, Defendant
and Appellant.**

No. 970068.

Supreme Court of Utah.

Jan. 12, 1999.

Jan Graham, Att'y Gen., Laura Dupaix, Ass't Att'y Gen., St. George, for plaintiff.

Kenneth L. Combs, St. George, for defendant.

HOWE, Chief Justice:

¶1 Defendant William M. Thomas appeals from convictions for rape of a child, a first degree felony (Utah Code Ann. § 76–5–402.1) ("Count I") and aggravated sexual abuse of a child, a first degree felony (Utah Code Ann. § 76–5–404.1) ("Count II"). The three assignments of error he makes are (1) the trial court abused its discretion by finding a child victim "unavailable" to testify as a witness and admitting into evidence a videotaped interview with the child victim; (2) the trial court erred in permitting the State to cross-examine Thomas concerning the contents of a letter allegedly written by him, when a copy had not been furnished to his trial counsel as required during discovery; and (3) the trial court erred in denying Thomas's motion for directed verdict where the State's information as to Count II misstated the law and the enhancement elements contained in the information were not subsequently proven by the State.

¶2 In May 1996, while Thomas was incarcerated in the Salt Lake County Jail on unrelated charges, he wrote a letter to his mother (the "confession letter") in which he confessed to sexually abusing several young girls, including his four-and five-year-old cousins (hereafter "C.M." and "S.M." respectively). In this letter, Thomas admitted to taking "advantage" of his cousins in early July 1995, while visiting Valene M. (Thomas's aunt and the girls' grandmother) in Hurricane, Utah, with his mother. Thomas recounted several instances in which he would "play with" his cousins and that he "raped the youngest daughter three times in one night." His mother turned the letter over to the police. Several days later in a telephone conversation with his mother in which she told him that the letter had been turned over to the police, Thomas admitted the events described in the letter, going into greater detail about both the circumstances and the specific acts involved.

¶3 His mother then called Valene M. to tell her that Thomas had admitted to sexually abusing the girls. S.M. confirmed the abuse, telling her grandmother, her mother, and police that Thomas had sexually abused her. At first, C.M. would not confirm the alleged abuse. However, in a second interview a week later, C.M. responded to questions about the abuse by pointing to a diagram of a human body, indicating where Thomas had touched her, and with what part of his body he had touched her.[1] A police officer and a social worker with the Division of Family Services conducted this second interview before a hidden video camera in the Washington County Sheriff's Department.

¶4 At trial, the children's mother, Thomas's mother, and Valene M. all testified that Thomas had been in Valene M.'s home with his mother on the dates in question and that both C.M. and S.M. had stayed at Valene M.'s house during that time as well. Thomas's mother confirmed that Thomas could have had access to the children during this period. Furthermore, the children's mother testified that soon after the time the incidents allegedly occurred, a physician treated C.M. for an unexplained redness and soreness to her vaginal area.

¶5 S.M., a seven-year-old at the time of the trial, testified that Thomas had touched

---

1. Previously, the interviewing officer showed C.M. a diagram of a human body to establish C.M.'s knowledge of several parts of the body, "specifically where the swimming suit covers the body." In response to the questioning, C.M. "placed an 'X' on the crotch area and then pointed to it to indicate the part of her body that [Thomas] touched and the part of [Thomas's] body [he] used to touch her."

her vaginal area one night when both she and Thomas were staying at her grandmother's house. Although she could not pinpoint the exact date, she did remember that her younger sister, C.M., was also present when the touching occurred. C.M., six years old at the time of the trial, would not respond to basic questioning by the trial court. The court, following an extended attempt to evoke answers to basic questions, found C.M. unable to do much more than acknowledge leading questions with largely nonverbal responses. Concerned that her nonverbal responses would not be reflected in the record, as well as potential strain to C.M., the court ruled over Thomas's objection that C.M. was "unavailable" for purposes of direct testimony. As a result, the court admitted the videotape of the second interview into evidence under rule 15.5(1)(h) of the Utah Rules of Criminal Procedure, which requires that for recorded testimonies to be admitted, the child is either "available to testify and to be cross-examined at trial" or that "the court determines that the child is unavailable as a witness." The jury then viewed the videotape in conjunction with the police officer's testimony. The court offered Thomas the opportunity to cross-examine C.M., but he did not avail himself of that opportunity.

¶ 6 The State also presented an edited photocopy of the confession letter to the jury.[2] On direct examination, Thomas denied writing the confession letter and implied that his mother's identification of his handwriting in the letter was incorrect. He further implied that his mother had something against him, saying that "[s]he would like to see [Thomas] behind bars."

¶ 7 On cross-examination, Thomas again denied having written the confession letter. The prosecution then offered for impeachment purposes a second letter [the "September letter"], purportedly written by Thomas to his mother, which indicated that the "confession letter was a lie and that he had written it only to see if [his mother] would give it to the police." Thomas objected to the use of the September letter, asserting that the State had not disclosed it pursuant to a discovery request, thereby surprising

the defense with the letter's existence. The State maintained that it had given Thomas's prior counsel a copy of the September letter, although there was no record of the letter in the defense file, and asserted that the letter was not part of the State's case-in-chief, but used merely for rebuttal purposes.

¶ 8 The trial court overruled Thomas's objection and allowed the State to use portions of the September letter to impeach him. Thomas denied ever having seen the September letter, let alone having written it. Thomas explained he had discussed his extended family with fellow inmates at great length. He suggested that the confession letter was possibly written by these inmates, who hated him, and who probably used details about his family which were disclosed during these talks to lend credence to the alleged confession.

¶ 9 At the conclusion of the State's case, the court denied Thomas's motion for a directed verdict. The jury returned verdicts of guilty on both counts, and he was sentenced to consecutive terms of ten years to life and five years to life, respectively. He now appeals from these convictions.

## I. UNAVAILABILITY OF WITNESS AND THE ADMISSIBILITY OF VIDEOTAPED TESTIMONY

¶ 10 Before addressing the major issues on appeal, we note that in his brief to this court Thomas contends that the trial court violated his right to confront and cross-examine witnesses under article I, section 12 of the Utah Constitution by admitting a videotape of C.M.'s out-of-court interview into evidence. His constitutional argument contains only one citation to supporting authority, several assertions, and little analysis.

¶ 11 " '[A] reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository in which the appealing party may dump the burden of argument and research.' " *State v. Bishop,* 753 P.2d 439, 450 (Utah 1988) (quoting *Williamson v. Opsahl,* 92 Ill.App.3d 1087, 48 Ill.Dec. 510, 416

2. This edited version of the letter omitted all    references to other victims.

N.E.2d 783, 784 (Ill.App.Ct. 1981)) (other citations omitted). Furthermore, "[i]t is well established that an appellate court will decline to consider an argument that a party has failed to adequately brief." *Valcarce v. Fitzgerald,* 961 P.2d 305, 313 (Utah 1998) (citations omitted); *see also State v. Cabututan,* 861 P.2d 408, 414 (Utah 1993); *State v. Wareham,* 772 P.2d 960, 966 (Utah 1989); *State v. Amicone,* 689 P.2d 1341, 1344 (Utah 1984).

¶ 12 When determining whether a party has adequately briefed an issue, this court looks to rule 24 of the Utah Rules of Appellate Procedure. *State v. Thomas,* 961 P.2d 299, 305 (Utah 1998). This rule prescribes that arguments in an appellant's brief "shall contain the contentions and reasons of the appellant with respect to the issues presented, including the grounds for reviewing any issue not preserved in the trial court, with citations to the authorities, statutes, and parts of the record relied on." Utah R.App. P. 24(a)(9).

¶ 13 As another court has stated:
"The brief of appellant should contain the points relied upon ... and these points should be supported by authorities.... If the questions involved in a case are of sufficient importance to justify asking this court to decide them, they are worthy of the careful consideration of counsel presenting them.... It is the duty of attorneys practicing in this court to present to the court the authorities supporting their views and to assist the court in reaching a correct conclusion."

*In re Estate of Kunz,* 7 Ill.App.3d 760, 288 N.E.2d 520, 523 (Ill.App.Ct.1972) (quoting *Kelley v. Kelley,* 317 Ill. 104, 147 N.E. 659 (1925)). We agree. As this court has said in the past, "[i]t is imperative that Utah lawyers brief this Court on relevant state constitutional questions." *State v. Earl,* 716 P.2d 803, 806 (Utah 1986) (citation omitted). Thomas's brief contains no substantive examination of his contention. There is only superficial citation of authority and cursory legal analysis; his argument is hurried at best—perfunctory and slap-dash at worst. For these reasons, we decline to address this issue.

## A. Unavailability

¶ 14 We turn now to Thomas's contention that the trial court admitted the videotape of C.M.'s out-of-court interview into evidence without first properly determining her unavailability. In order to admit such an interview into evidence, the trial court must comply with the requirements set forth under section 76–5–411 of the Utah Code, which provides:

(1) Notwithstanding any rule of evidence, a child victim's out-of-court statement regarding sexual abuse of that child is admissible as evidence although it does not qualify under an existing hearsay exception, if:

(a) the child is available to testify in court or under Rule 15.5(2) or (3), Utah Rules of Criminal Procedure;

(b) if the child is not available to testify in court or under Rule 15.5(2) or (3), Utah Rules of Criminal Procedure, there is other corroborative evidence of the abuse; or

(c) the statement qualifies for admission under Rule 15.5(1), Utah Rules of Criminal Procedure.

(2) Prior to admission of any statement into evidence under this section, the judge shall determine whether the interest of justice will best be served by admission of that statement. In making this determination the judge shall consider the age and maturity of the child, the nature and duration of the abuse, the relationship of the child to the offender, and the reliability of the assertion and of the child.

(3) A statement admitted under this section shall be made available to the adverse party sufficiently in advance of the trial or proceeding, to provide him with an opportunity to prepare to meet it.

(4) For purposes of this section, a child is a person under the age of 14 years.

The trial court must also comply with the requirements that

the child is available to testify and to be cross-examined at trial, either in person or as provided by Subsection (2) or (3), or the court determines that the child is unavailable as a witness to testify at trial under

the Utah Rules of Evidence. For purposes of this subsection "unavailable" includes a determination, based on medical or psychological evidence or expert testimony, that the child would suffer serious emotional or mental strain if required to testify at trial.

Utah R.Crim. P. 15.5(1)(h). Thomas concedes that "the Court considered all the requirements except for the one contained in rule 15.5(1)(h)," concerning the availability of the child victim. Specifically, Thomas objects to the admission of the videotaped testimony on the ground that the court did not base its unavailability ruling on "medical or psychological evidence or expert testimony," but merely upon the court's observation of the witness.

■ ¶ 15 While it is true that rule 15.5(1)(h) specifies a court may use "medical or psychological evidence or expert testimony" to determine availability, rule 15.5(1)(h) also specifies an additional determination "under the Utah Rules of Evidence." Thus, rather than *limiting* the definition of unavailability, rule 15.5(1)(h) on its face *expands* the definition to *include* the definitions of unavailability set forth under rule 804 of the Utah Rules of Evidence. Because of this expansive language, trial courts are allowed a wider discretion in finding a witness unavailable under rule 15.5(1)(h). Trial courts are not limited to using "medical or psychological evidence or expert testimony" except in those cases when a determination of potential strain to the witness is necessary. The trial court based its determination of C.M.'s unavailability upon rule 15.5(1)(h)'s reference to the Utah Rules of Evidence. Thus, we find that the trial court properly interpreted the plain language of the rule.

¶ 16 However, Thomas further contends that even if such expert testimony or evidence were unnecessary in this case, the trial court still erred in finding C.M. unavailable. To support his argument, he relies upon our decision in *State v. Seale*, 853 P.2d 862 (Utah 1993). In that case, we were not persuaded by the appellant's argument that a child "was unavailable because of her 'total failure of recollection at trial' ... [and] that children, even if present at trial, might be found un-

available ... because of their lack of maturity." *Id.* at 873. Thomas argues that the trial court based its ruling on these same points, namely, lack of memory and immaturity. He interprets *Seale* to hold that "mere non-responsiveness, at least the level tolerated by the trial court in the instant case, is not enough to find unavailability."

¶ 17 Our decision in *Seale* is inapposite to the instant case. *Seale* dealt with an eleven-year-old child witness who responded to questioning relevant to the alleged abuse with "I don't remember"; the instant case deals with a six-year-old witness who would not verbally respond even to that degree. The trial court in *Seale* was at least able to evince responses sufficient to question the witness's memory or responsiveness; here, the trial court was unable even to reach the point where memory could be questioned.

■ ¶ 18 Thomas is correct in pointing out that *Seale* held that "children, even if present, may [not] be found to be constitutionally unavailable any more readily than adults." *Id.* However, this passage in *Seale* is not an absolute prohibition on a court basing a finding of unavailability on a lack of maturity; in *Seale*, we pointed out that a finding that children were *generally* unavailable due to lack of maturity was at odds with language in *State v. Webb*, 779 P.2d 1108 (Utah 1989) (opinion of Zimmerman, J.). In *Webb*, the trial judge neither took the opportunity to interview the child nor heard any expert testimony as to the child's capability to testify. Justice Zimmerman wrote: "It is not enough to make some *general* assumptions about *all children of this age;* the trial court must determine whether *this particular child* is constitutionally unavailable." *Id.* at 1114 (emphasis added). Justice Zimmerman, referring to a statute declaring all victims of child abuse to be competent witnesses regardless of age, *see* Utah Code Ann. § 76–5–410, further stated that "it is hard to understand how the trial court could find *all children* of the age of the alleged victim incompetent to testify and, for that reason, unavailable." *Webb*, 779 P.2d at 1114 n. 7 (emphasis added). We agree with these statements; *all* children of a certain age cannot and should not be found unavailable

on the basis of age in the *absence of specific findings* by the trial court as to the individual child's inability to testify because of immaturity. *See Seale*, 853 P.2d at 873. In the instant case, the record contains specific findings as to C.M.'s inability to testify. The judge personally questioned C.M. and repeatedly voiced his concerns about C.M.'s inability to testify.

¶ 19 As we indicated above, rule 15.5(1)(h) does not limit unavailability to dependency upon "medical or psychological evidence or expert testimony," but also allows a determination of unavailability under rule 804 of the Utah Rules of Evidence, which reads in pertinent part:

(a) Definition of unavailability. "Unavailability as a witness" includes situations in which the declarant:

(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or

(2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or

(3) testifies to a lack of memory of the subject matter of the declarant's statement; or

(4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

(5) is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance by process or other reasonable means.

A declarant is not unavailable as a witness if the exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of the declarant's statement for the purpose of preventing the witness from attending or testifying.

Utah R. Evid. 804(a). While we recognize that neither "age" nor "ability to testify" is *specifically* delineated as a basis for unavailability under rule 804, we note that the language of the rule is that " '[u]navailability as

a witness' *includes* situations...." *Id.* (emphasis added). Rule 804 does not limit the situations in which a witness may be found unavailable. Rather, it lists common instances in which unavailability may occur. *See* Edward L. Kimball & Ronald N. Boyce, *Utah Evidence Law* art. 8, at 75 (1996).

¶ 20 Trial courts have a broad discretion in matters dealing with the proceedings in general and with witnesses in particular because from their position they are able to assess special information, such as nonverbal cues, which is difficult—not impossible—for reviewing courts to glean from the record. We stress, however, that this discretion does not extend to allowing trial courts to unreservedly entertain and unhesitatingly accept *all* claims of witness unavailability. While we find the rule 804 definition to be nonexclusive, significant caution should be shown in finding additional circumstances warranting a grant of unavailability.

¶ 21 In the instant case, the trial judge used a variety of direct questions designed to put C.M. at ease and to test her memory and cognitive ability. He asked her questions about the courtroom and various items of clothing (including her dress, his robe, and a police officer's uniform). He asked her specific questions about her school, her pets, and her doll and other toys. To all of these questions, C.M. occasionally responded with either one-or two-word answers, but usually just nodded her head, both in the affirmative and in the negative, or gave no response at all. The judge even allowed C.M. to sit on her mother's lap on the witness stand in an attempt to elicit a substantive reply. It is difficult to determine from the record the amount of time the judge spent waiting for a reply to his questions; it is impossible to gauge C.M.'s nonverbal responses or body language. The judge, however, had all of this information at hand and spent a considerable amount of time explaining his concerns and reasoning to the attorneys involved.

¶ 22 In light of the foregoing analysis, we find no error on the part of the trial court in exercising its discretion and ruling that C.M. was unavailable on these bases. The unavailability ruling was not made hastily or un-

informedly; after considerable effort and concern, the court came to a reasonable conclusion based upon facts uniquely in its purview. Accordingly, the videotaped out-of-court testimony was properly admitted into evidence pursuant to rule 15.5 and section 76–5–411.

## II. POTENTIAL DISCOVERY VIOLATION AND POSSIBLE ERROR

¶ 23 We turn next to Thomas's second issue on appeal: whether the trial court erred in permitting the State to cross-examine Thomas using a letter allegedly withheld from the defense in violation of Thomas's discovery request. Thomas complains that the trial court improperly ruled that the September letter could be used for impeachment purposes and erroneously overruled Thomas's objections of surprise and lack of discovery.

### A. Discovery

¶ 24 In the past, we have stressed the importance of recognizing that "the prosecution has a duty to provide discovery materials to the defense on request." *State v. Hay*, 859 P.2d 1, 7 (Utah 1993) (citing Utah R.Crim. P. 16(a); *State v. Archuleta*, 850 P.2d 1232, 1242–43 (Utah 1993)). Furthermore, rule 3.8(d) of the Rules of Professional Conduct dictates that a prosecutor shall "[m]ake timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense." [3] The State's duty to make such disclosures "extends to unrequested information that is or may be exculpatory." *Hay*, 859 P.2d at 7 (citations omitted).

¶ 25 Thomas also asserts that the letter was exculpatory in nature, complaining that the State was able to transform an "exculpatory letter" into an "impeachment device" simply by "concealing" the letter until after Thomas's testimony. It is unclear, however, whether this letter was clearly exculpatory in nature. At any rate, the State has long had an "open file policy" pursuant to which documents and evidence are generally given to defense counsel soon after the State receives them. *See, e.g., State v. Carter*, 888 P.2d 629, 640 (Utah 1995) (stating that particular evidence in State's files available to defendant through State's "open file policy"); *Parsons v. Barnes*, 871 P.2d 516, 526 (Utah 1994) (stating that under prosecutor's "open file policy," defense received all evidence and documents simultaneously with prosecutor receiving it); *Archuleta*, 850 P.2d at 1243 (State provided defense with copies of evidence pursuant to an "open file policy"); *State v. Worthen*, 765 P.2d 839, 854 (Utah 1988) (Howe, J., dissenting) ("Prosecutors generally open their files to defense counsel for discovery."). Whether the September letter was exculpatory or inculpatory in nature, it should have been turned over to Thomas. At trial, the State insisted it provided Thomas's prior counsel with "at least ... the disclosure that the State possessed the [September] letter" and strongly believed the State sent a copy of the September letter to his former counsel as well, although no record existed in the file. Despite the State's beliefs and its insistence to the contrary, we have no documentary evidence before us that indicates Thomas's defense counsel—either past or present—ever received the September letter. We therefore find that the State acted improperly in not furnishing a copy of the letter to Thomas's subsequent counsel.

### B. Allowing the Use of the Letter at Trial

¶ 26 Thomas further contends that the trial court committed *reversible* error when it allowed the September letter to be used at trial. Based upon the concept that the trial court is best situated to determine what, if any, impact an alleged error will have on the proceedings, *see State v. Harmon*, 956 P.2d 262, 276 (Utah 1998); *Hay*, 859 P.2d at 6; *State v. Gardner*, 789 P.2d 273, 287 (Utah 1989); *State v. Speer*,

---

3. We wish to emphasize the unique responsibility of a prosecutor. "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate ... [including] specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence." Utah R. Prof. Conduct 3.8 cmt.

750 P.2d 186, 190 (Utah 1988), we will reverse only where an error is so prejudicial and so substantial that, absent the error, it is reasonably probable that the result would have been more favorable for the defendant. *See Harmon,* 956 P.2d at 276; *Hay,* 859 P.2d at 7; *Gardner,* 789 P.2d at 287; *State v. Lamper,* 779 P.2d 1125 (Utah 1989); *Speer,* 750 P.2d at 190. In other words, the "mere possibility" of a different outcome occurring without the evidence is not enough; instead, "the likelihood of a different outcome must be sufficiently high to *undermine confidence in the verdict." State v. Knight,* 734 P.2d 913, 920 (Utah 1987) (emphasis added).

¶ 27 Here, the September letter was not a critical factor in proving the State's case; apparently the State was not even planning on using the letter before hearing Thomas's testimony. The jury heard the testimony of both victims regarding the extent and manner of the abuse and the identity of their abuser. The jury also heard the testimony of Thomas's own mother regarding the handwriting and signature in the confession letter as well as her testimony concerning Thomas's oral confession to her. Additionally, Thomas does not suggest in what way he may have altered his defense had he known the State possessed the letter, save that he would not have testified. By testifying, he was able to present an alternate story to the jury, to rebut the evidence presented against him, and to allow the jury to judge the credibility of the evidence. Furthermore, the September letter itself was not admitted into evidence; the jury heard only that the letter claimed the confession letter was a lie and was written solely to determine whether his mother would turn the confession letter over to the police. In light of the overwhelming amount of evidence presented to the jury, there is little likelihood that the outcome of the case would have been any more favorable to Thomas absent the September letter; our confidence in the verdict is not undermined. We therefore conclude that neither the prosecutor's failure to provide a copy of the letter to defense counsel or his use of the letter in cross-examining defendant was prejudicial, but instead amounted to harmless error.

## III. ERROR IN STATE'S INFORMATION

¶ 28 Finally, Thomas contends that the trial court erred in denying his motion for a directed verdict, asserting that the State's information "incorrectly set out the law on Count II regarding the offense of Aggravated Sexual Abuse of a Child." He asserts that since "the State failed to prove each and every element of its information, specifically those elements as contained in section 76–5–404.1(3)(f) & (g) [of the Utah Code]," the trial court should have granted his motion for directed verdict.

¶ 29 However, we find that Thomas did not request a directed verdict on Count II, but only on Count I. This motion, denied by the trial court, was worded as follows:

If we could, Your Honor, I would move the Court for a directed verdict specifically, Your Honor, in that I think the State has failed to prove, as far as elements of Count I . . . failed to prove that on or about 4, July, 1995[,] . . . the element of 4th of July, the date, Your Honor, I believe they failed to do that.

The motion, though unsuccessful, dealt with elements of Count I alone; there was no mention made of any objections to elements of Count II. "Absent any indication that this issue was raised at trial, it cannot be considered for the first time on appeal." *State v. Nelson,* 725 P.2d 1353, 1357 (Utah 1986) (citations omitted); *see also Monson v. Carver,* 928 P.2d 1017, 1022 (Utah 1996) ("We decline to address these additional claims because of our general rule that 'issues not raised at trial cannot be argued for the first time on appeal.'" (quoting *State v. Lopez,* 886 P.2d 1105, 1113 (Utah 1994))).

¶ 30 Furthermore, we have repeatedly held that "failure to object at trial to alleged defects in the information constitutes waiver of the opportunity to challenge its contents on appeal." *State v. John,* 770 P.2d 994, 995 (Utah 1989); *accord State v. Smith,* 700 P.2d 1106, 1109 (Utah 1985); *State v. Lairby,* 699 P.2d 1187, 1192 (Utah 1984); *see also State v. Marcum,* 750 P.2d 599, 602 (Utah 1988) (finding waiver of claim

of prejudicial variance between information and evidence when defendant did not object at trial).

¶ 31 For the foregoing reasons, Thomas has not only waived any issue dealing with the trial court's failure to grant a directed verdict regarding alleged errors in Count II of the information, but has also waived *any* issue dealing with alleged defects in the information. We therefore decline to address this issue.

¶ 32 In light of the foregoing analysis, we reject Thomas's contentions and affirm the judgment and conviction.

¶ 33 Associate Chief Justice DURHAM and Justice RUSSON concur in Chief Justice HOWE's opinion.

STEWART, Justice, concurring in the result:

¶ 34 The majority holds that C.M.'s videotaped pretrial testimony was admissible at trial even though it was hearsay and even though C.M. was physically available to testify. Rule 15.5(1)(h) of the Utah Rules of Criminal Procedure allows videotaped testimony of child sex abuse victims in limited circumstances. But the requirements of that rule were not complied with—as the majority admits—so C.M.'s out-of-court accusations were not admissible under that rule. Nevertheless, the Court holds that the evidence was admissible under an entirely new and, in my view, inappropriate construction of Rule 804(a) of the Utah Rules of Evidence. In its rush to affirm the conviction, the majority's ruling creates a significant and unjustified loophole in the rules against hearsay evidence, utterly subverts the legislative policy embodied in Rule 15.5(1)(h), and seriously questions the right of confrontation under the Utah Constitution. *See* Utah Const. art. I, § 12; *State v. Lenaburg,* 781 P.2d 432, 434–36 (Utah 1989); *State v. Mannion,* 19 Utah 505, 512–13, 57 P. 542, 544 (1899).

¶ 35 The result of the majority's opinion is that, in the future, Rule 15.5 and its safeguards will have absolutely no effect because prosecutors and trial courts can admit child hearsay evidence irrespective of that rule. Nevertheless, I agree that the conviction should be affirmed, not because the trial was error-free, as the majority holds, but because, in the end, the error did not affect the outcome of the trial.

¶ 36 Utah Code Ann. § 76–5–411 states that "a child victim's out-of-court statement" may be admitted in three instances in sexual abuse cases, even though it is hearsay.[4] The majority relies on § 76–5–411(1)(c),[5] which permits the admission of a child's out-of-court declaration if it meets the requirements of Rule 15.5(1) of the Utah Rules of Criminal Procedure. That rule permits the admission of a videotaped recording of the testimony of a child sex abuse victim. Subsection (h) of Rule 15.5(1) permits the admission of such evidence if the child is "unavailable" as that term is defined by Rule 804(a) of the Utah Rules of Evidence. However, Rule 15.5(1)(h) also provides an additional instance of "una-

---

**4.** Utah Code Ann. § 76–5–411 (1995) states:

(1) Notwithstanding any rule of evidence, a child victim's out-of-court statement regarding sexual abuse of that child is admissible as evidence although it does not qualify under an existing hearsay exception, if:
(a) the child is available to testify in court or under Rule 15.5(2) or (3), Utah Rules of Criminal Procedure;
(b) if the child is not available to testify in court or under Rule 15.5(2) or (3), Utah Rules of Criminal Procedure, there is other corroborative evidence of the abuse; or
(c) the statement qualifies for admission under Rule 15.5(1), Utah Rules of Criminal Procedure.
(2) Prior to admission of any statement into evidence under this section, the judge shall determine whether the interest of justice will

best be served by admission of that statement. In making this determination the judge shall consider the age and maturity of the child, the nature and duration of the abuse, the relationship of the child to the offender, and the reliability of the assertion and of the child.
(3) A statement admitted under this section shall be made available to the adverse party sufficiently in advance of the trial or proceeding, to provide him with an opportunity to prepare to meet it.
(4) For purposes of this section, a child is a person under the age of 14 years.

**5.** The majority does not and cannot rely on subsections (2) or (3) of Rule 15.5, nor does it assert that corroborative evidence was an essential aspect of defendant's conviction. The majority opinion refers only to Rule 15.5(1)(h).

vailability" in child abuse cases. A child may also be unavailable if the trial court finds, *"based on medical or psychological evidence or expert testimony, that the child would suffer serious emotional or mental strain if required to testify at trial."* (Emphasis added.)

¶ 37 The rule specifically directs the trial judge to determine unavailability under the Rule 15.5(1)(h) test "based on medical or psychological evidence or expert testimony." Absent some evidence from one qualified to comment on a child's detrimental emotional or mental strain caused by testifying, a trial judge should not rule a child unavailable under Rule 15.5(1)(h). *Cf. State v. Matsamas*, 808 P.2d 1048, 1052 (Utah 1991). There was no such evidence in this case. The trial judge stated that "the State has not offered any medical or psychological evidence or expert testimony that [C.M.] would suffer serious emotional or mental strain if required to testify at trial." He candidly acknowledged that "my bases [for ruling her unavailable] have been on my own observation of [her]" and that "I'm going to have to walk out on thin ice there to the extent that I'm not sure that I even need competent medical testimony to tell me that this child would be harmed by competent examination." A ruling of unavailability under Rule 15.5(1)(h), in the absence of such evidence, is error, as the majority indeed recognizes.

¶ 38 Furthermore, C.M. was not unavailable under Rule 804(a) of the Utah Rules of Evidence. She did not fit any of the five circumstances in which a hearsay declarant may be found to be unavailable. Under Rule 804(a), a witness may be found "unavailable" to testify based on the witness' (1) invoking of an evidentiary privilege, (2) refusal to testify, (3) lack of memory, or (4) death or infirmity, or the (5) inability to compel the witness' attendance.

¶ 39 The majority properly holds that Rule 15.5(1) did not permit the admission of C.M.'s hearsay, but then, to justify admission of C.M.'s out-of-court statements, holds for the first time in our history that "Rule 804

does not limit the situations in which a witness may be found unavailable," and that therefore C.M.'s statements were admissible. This ruling is simply contrary to where the law is. Courts have narrowly construed the definition of "unavailable," limiting its application specifically to the five listed Rule 804(a) situations. *See People v. Johnson*, 118 Ill.2d 501, 115 Ill.Dec. 384, 517 N.E.2d 1070, 1074 (1987); Fed.R.Evid. 804 advisory committee's notes on proposed rules, Note to Subdivision (a) ("Five instances of unavailability are specified...."); Jo Ellen S. McComb, Comment, *Unavailability and Admissibility: Are a Child's Out-of-Court Statements About Sexual Abuse Admissible if the Child Does Not Testify at Trial?*, 76 Ky. L.J. 531, 547 (1987) ("[Unavailability] has been construed strictly according to the definition in Federal Rule 804(a)." (footnotes omitted)). *But see* Edward L. Kimball & Ronald N. Boyce, *Utah Evidence Law* art. 8, at 75 (1996).[6] Additionally, when the hearsay testimony of an unavailable person is used against a criminal defendant, *courts typically apply the "unavailability" standard stringently to avoid any impingement on the defendant's Sixth Amendment rights.* *See* Glen Weissenberger, *Federal Rule of Evidence 804: Admissible Hearsay From an Unavailable Declarant*, 55 U. Cin. L.Rev. 1079, 1082, 1087–88 (1987) (citing cases). Accordingly, I would limit the definition of "unavailable" under Rule 804(a) to the five specified situations.

¶ 40 In sum, C.M. was not unavailable to testify at trial under Rule 804(a) of the Utah Rules of Evidence or Rule 15.5(1)(h) of the Utah Rules of Criminal Procedure. I submit that the majority errs in finding that C.M. was "unavailable" and that her videotaped pretrial testimony could be used at trial.

¶ 41 Nevertheless, the error, in my view, was harmless, and Thomas' conviction should therefore be affirmed. " 'Harmless' errors are 'errors which, although properly preserved below and presented on appeal, are sufficiently inconsequential that we conclude there is no reasonable likelihood that the

---

**6.** However, Professors Kimball and Boyce offer no support at all for their assertion that Rule 804(a) is nonexclusive.

error affected the outcome of the proceedings.'" *State v. Hamilton,* 827 P.2d 232, 240 (Utah 1992) (quoting *State v. Verde,* 770 P.2d 116, 120 (Utah 1989)); *see also* Utah R. Evid. 103(a); Utah R.Crim. P. 30(a). "'For an error to require reversal, the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict.'" *Hamilton,* 827 P.2d at 240 (quoting *State v. Knight,* 734 P.2d 913, 920 (Utah 1987)). "The more evidence supporting the verdict, the less likely there was harmful error." *Id.*

¶ 42   Because of the evidence supporting conviction in this case, I cannot say that the trial court's error in ruling C.M. unavailable and admitting her videotaped testimony "undermines confidence in the verdict." Although disputed, the prosecution put forward strong evidence that Thomas had confessed twice to the sexual assault—both in a written letter and in a phone conversation with his mother. S.M., C.M.'s older sister, testified that C.M. was present in the room the night Thomas assaulted S.M., putting both the accused and the victim in physical proximity on the night in question. Further, C.M.'s mother testified that, shortly after the assault, she had taken C.M. to a doctor for unexplained pain C.M. suffered when she urinated and redness in her genital area. Even without C.M.'s videotaped testimony, there is sufficient evidence to support the jury's verdict, and the court's evidentiary error does not undermine confidence in that verdict.

¶ 43   It follows the conviction should be affirmed.

¶ 44   Justice ZIMMERMAN concurs in Justice STEWART's concurring in the result opinion.