2005 UT App 400

**MI VIDA ENTERPRISES, a Utah corporation; and Mark A. Steen, individually and as personal representative of the Estate of M.L. Steen, Plaintiffs, Appellees, and Cross-appellants,**

v.

**Nancy Ciddio STEEN–ADAMS and Charles A. Steen III, Defendants, Appellants, and Cross-appellees.**

No. 20030022–CA.

Court of Appeals of Utah.

Sept. 22, 2005.

Rehearing Denied Nov. 9, 2005.

James M. Hult and Stephen S. Wills, Hult Law Firm PC, Boulder, Colorado; Randal L. Meek and Chase Kimball, Law Offices of Randal L Meek PC, Midvale, for Appellants.

Cynthia T. Kennedy, Kennedy & Kennedy PC, LaFayette, Colorado, Thomas Finch, Boulder, Colorado; Keith H. Chiara, Price, and Allen S. Thorpe, Castle Dale, for Appellees.

Before BENCH, Associate Presiding Judge, McHUGH, and ORME, JJ.

## OPINION

BENCH, Associate Presiding Judge:

¶1 Nancy Ciddio Steen–Adams (Nancy) appeals the district court's orders granting partial summary judgment and attorney fees in favor of Mi Vida Enterprises (Mi Vida) and Mark Steen (Mark). Charles A. Steen III (Charles III) appeals only the award of fees. We affirm in part and reverse in part.

## BACKGROUND

¶2 In December 1972, Mi Vida was organized as a Utah corporation. As a closely held family corporation, it was formed to hold title to certain real property previously owned by Charles Steen Sr. and his wife, M.L. Steen. Mi Vida holds title to various properties in Boulder County, Colorado and Grand County, Utah. The properties had multiple encumbrances, including an Internal Revenue Service tax lien. As a result of these encumbrances, the properties were essentially worthless for many years.

¶3 Through the years, Mi Vida attempted to make the properties profitable by entering into various mining agreements. In 1983, Mi Vida entered into the Gold Hill Venture Agreement with Cosmos Resources, Inc. (Cosmos). Under the agreement, Mi Vida was to contribute its properties, free of encumbrances. Cosmos was to contribute $4,000,000, which was to be used to construct a mill and acquire additional mining claims. The parties contemplated that Mi Vida and Cosmos would each acquire a forty percent interest in the shares owned, or acquired, by the other. The cross-conveyances were never made.

¶4 Mark, the vice president of Mi Vida, took title in his own name, on behalf of Cosmos, to various mining claims (the Cosmos Claims) in 1982 and 1983. By late 1984, it became clear that Cosmos lacked the resources to construct the mill. Mi Vida and Cosmos then negotiated with Richard and Gwen Fraser (the Frasers) in an effort to secure funds for the construction of the mill. Although Mi Vida, Cosmos, and the Frasers

never entered into a formal agreement, the Frasers contributed funds toward the construction of the mill. In 1987, the mill was constructed on the Oscar Claim and the Good Enough Claim, which were both part of the Cosmos Claims. The Oscar Claim and the Good Enough Claim were later conveyed to the Frasers.

¶ 5 Nancy became a shareholder in Mi Vida in 1986, when she divorced Charles Steen Jr. and was awarded one-half of his shares. In 1987, a shareholders meeting was held. Two attorneys for Nancy were present at the meeting. During the meeting, the shareholders discussed the Gold Hill Venture Agreement and Mark's purchase of the Cosmos Claims. Charles Steen Jr. and Andrew Steen accused Mark of fraudulent conduct with regard to various aspects of the Gold Hill Venture Agreement. Mi Vida's attempts to negotiate a partnership agreement with the Frasers were also discussed. Another shareholders meeting, held in 1989, consisted of similar discussions. Although neither of Nancy's attorneys were in attendance at this later meeting, a transcript of the meeting was sent to one of her attorneys.

¶ 6 In 1990, Mark and John Steen purchased additional Boulder County claims, known as the Little and Rodgers Claims. By 1991, Mi Vida's negotiations with the Frasers had still failed to produce a partnership agreement. However, Mi Vida entered into a milling contract with Colino Ore Molino, Inc., a company formed by the Frasers to hold and manage the mill. The milling contract contained an assignment clause, allowing Mi Vida to assign to Mark its rights in the contract "as to properties owned by Mark Steen." The purchase of the Little and Rodgers Claims and the milling contract were discussed at the 1991 shareholders' meeting. Nancy's attorney received a copy of the milling contract, which accompanied the notice of the 1991 meeting.

¶ 7 Despite all these efforts, no commercial quantities of ore were ever milled for Mi Vida under the milling contract. In 1992, Mark conveyed the Cosmos Claims and the Little and Rogers Claims to three corporations (the Mark Steen Companies), which he had formed. In 1998, ITEC Environmental, Inc. (ITEC) purchased the mill. Mi Vida and the Mark Steen Companies then formed a limited liability company, Golden Tontine, L.L.C. (Tontine), to represent their interests in doing business with ITEC. Tontine and ITEC entered into an agreement allowing ITEC to develop surface resources on the properties of Mi Vida and the Mark Steen Companies. In 2001, the Mark Steen Companies sold the Cosmos Claims and the Little and Rodgers Claims to Boulder County for $2,700,000.

¶ 8 In 1999, Nancy, Charles III, and other disgruntled parties filed a shareholders' derivative action in Colorado seeking the appointment of a receiver to dissolve Mi Vida. The complaint alleged that Mi Vida was entitled to share in the proceeds derived from the sale of the Cosmos Claims and the Little and Rodgers Claims and that Mark had improperly "diverted" these and other assets from Mi Vida. Mi Vida, Mark, and other defendants named in the Colorado action jointly moved to dismiss the complaint on various legal theories, including lack of subject matter jurisdiction in Colorado. In a lengthy written order, the Colorado district court denied the motion to dismiss. Mi Vida then filed suit in Utah to enjoin the dissolution action. The Utah district court entered a preliminary injunction. Nancy, Charles III, and the other parties in the Colorado action stipulated to the Utah district court's jurisdiction, voluntarily dismissed the Colorado claims, and reasserted their causes of action in the Utah case. Later, the district court determined that Charles III and other putative shareholders lacked standing to pursue their claims.[1] Thus, Nancy was left to pursue the claims as the sole dissident shareholder.

¶ 9 The district court dismissed several of Nancy's claims on summary judgment, including those involving the Cosmos Claims and the Little and Rodgers Claims, concluding that the claims were barred by the stat-

---

**1.** Charles III is not a shareholder in Mi Vida. Although his late grandmother, M.L. Steen, bequeathed shares to him, the bequest has not been fulfilled because M.L. Steen's estate has stalled in probate.

ute of limitations. The remaining claims proceeded to trial, where the district court found no wrongdoing. Nancy's shares were valued at $261,086.88 and bought out by Mi Vida. The district court assessed attorney fees against Nancy and Charles III. Nancy was ordered to pay $60,259.40 for fees incurred during the course of the Colorado litigation and $269,450.60 in fees incurred in connection with the Utah action, for a total of $329,710.00. The value of Nancy's shares was offset by the award of fees, resulting in a net judgment against Nancy in the amount of $68,623.96. Charles III was assessed $8,950.55 for fees incurred in the Colorado action. Nancy now appeals the entry of summary judgment and the award of fees.[2] Charles III appeals the award of fees against him.

## ISSUES AND STANDARDS OF REVIEW

¶ 10 Nancy argues that the district court erred in granting summary judgment. "[I]n reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Higgins v. Salt Lake County*, 855 P.2d 231, 233 (Utah 1993). Summary judgment is proper if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c).

¶ 11 In addition, Nancy and Charles III contest the award of fees to Mi Vida and Mark. "Whether attorney fees are recoverable in an action is a question of law, which we review for correctness." *Valcarce v. Fitzgerald*, 961 P.2d 305, 315 (Utah 1998). "[W]hether the trial court's findings of fact in

support of an award of fees are sufficient is a question of law, reviewed for correctness." *Id.*

## ANALYSIS

### I. Summary Judgment

¶ 12 Nancy first argues that the district court erred in granting summary judgment in favor of Mi Vida because she was not personally aware of Mark's wrongdoing until sometime after 1997. The parties agree that the applicable statute of limitations is found in Utah Code section 78–12–27. *See* Utah Code Ann. § 78–12–27 (2002). Under that section, an action "must be brought within three years after the discovery, by the aggrieved party, of the facts upon which [the action is based]." *Id.* Section 78–12–27 contains a "statutory discovery rule," which automatically tolls the running of the limitations period until the wrongdoing is discovered by the plaintiff. *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 21, 108 P.3d 741.

¶ 13 The district court concluded that certain Mi Vida documents and information brought to light in shareholders' meetings during the period from 1987 to 1991 put Nancy on inquiry notice of Mark's alleged wrongdoing with regard to the Cosmos Claims and the Little and Rodgers Claims. Nancy apparently concedes that this information, if known to her, may have been sufficient to alert her "that perhaps some skullduggery was afoot" and trigger the running of the statute of limitations.[3] Nevertheless, Nancy argues that summary judgment

---

**2.** In the final section of her brief, Nancy also contests the district court's findings on a large number of other claims. However, Nancy contents herself with merely pointing to record evidence supporting her position, and fails to marshal all the evidence that supports the district court's findings. A party challenging a district court's factual findings "must marshal *all* relevant evidence presented at trial which tends to support the findings and demonstrate why the findings are clearly erroneous." *West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1313 (Utah Ct.App.1991). This burden requires the challenger to present "every scrap of competent evidence introduced at trial which *supports* the very findings the appellant resists." *Id.* at 1315.

Nancy has made *no* effort to meet this burden, therefore, we cannot consider her arguments on these points.

**3.** Only in her reply brief does Nancy appear to question the adequacy of the notice provided by the information released during the period from 1987 to 1991. Because this argument was not raised in the opening brief or in response to a "new matter set forth in the opposing brief," we decline to address it. Utah R.App. P. 24(c); *see also Coleman ex rel. Schefski v. Stevens*, 2000 UT 98, ¶ 9, 17 P.3d 1122 ("[W]e will not consider matters raised for the first time in the reply brief.").

was inappropriate because she was not, in fact, personally aware of the information until sometime after 1997.

■ ¶ 14 Mi Vida and Mark supported their motion for summary judgment with evidence that attorneys for Nancy either attended the relevant meetings or were sent all relevant documents during the period from 1987 to 1991. "Under longstanding Utah law, the knowledge of [an] agent concerning the business which he is transacting for his principal is to be imputed to his principal." *Wardley Better Homes & Gardens v. Cannon,* 2002 UT 99, ¶ 16, 61 P.3d 1009 (alteration in original) (quotations and citation omitted). Nancy does not assert that her attorneys lacked authority to act on her behalf with regard to her Mi Vida interest; nor does she argue that her attorneys did not receive the information. Rather, she contends that she did not personally become aware of the information until after 1997.

■ ¶ 15 Nancy's plea of ignorance avails her nothing because the knowledge of her attorneys is imputed to her. Thus, assuming, as Nancy concedes, that the information made available to her attorneys was sufficient to apprise them of facts underlying her cause of action, the district court properly concluded that the three-year statute of limitations had expired long before Nancy filed suit in 1999.[4]

## II.  Attorney Fees

¶ 16 Nancy and Charles III argue that the district court erred in awarding attorney fees incurred by Mi Vida and Mark in defending against the action for dissolution brought in Colorado.[5] Under Utah Code section 78–27–56, attorney fees are awarded to a prevailing party "if the court determines that the action . . . was [1] without merit and [2] not brought or asserted in good faith." Utah Code Ann. § 78–27–56(1) (2002).[6] These "requirements

4.  Nancy attempts to make two alternative arguments. First, she suggests that Mark's involvement in the 1998 ITEC transaction represented the final step necessary to complete the cause of action. Under this theory, the wrongdoing on Mark's part was not actually complete until the ITEC deal was entered into. However, Nancy fails to detail the connection between the ITEC transaction and the Cosmos Claims and the Little and Rodgers Claims. Moreover, even if Nancy could explain a connection, the district court found that no Mi Vida interests were adversely impacted by the ITEC transaction. Second, in an argument that is even more tenuous than the first, Nancy appears to argue that Mark's transfer of the Cosmos Claims and the Little and Rodgers Claims to new companies in 1992 constituted the final act necessary to complete the cause of action. Again, Nancy fails to develop the argument. This court will not address arguments that are not presented with sufficient clarity or that are unsupported by citation to authority. *See State v. Thomas,* 1999 UT 2, ¶ 11, 974 P.2d 269 ("[A] reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository in which the appealing party may dump the burden of argument and research." (alteration in original) (citations and quotations omitted)).

5.  Nancy also contends that the district court improperly awarded attorney fees that Mi Vida and Mark incurred in defending against the derivative claims in Utah. *See* Utah Code Ann. § 16–10a–740(6) (2001) (governing the award of attorney fees in derivative actions). However, Nancy merely raises the issue without providing any supportive analysis. Nancy quotes Utah

Code section 16–10a–740(6) and cites several cases, but her brief makes no attempt to apply the statute and case law to the facts of this case. This court will not address issues that are inadequately briefed. *See Thomas,* 1999 UT 2 at ¶ 11, 974 P.2d 269.

6.  The district court indicated that attorney fees were also recoverable under to rule 11 of the Utah Rules of Civil Procedure or under an abuse of process theory. In this case, both of these theories, like Utah Code section 78–27–56(1), would require a showing of bad faith or its equivalent. *See* Utah R. Civ. P. 11(b)(1) (indicating that sanctions, including attorney fees, may be imposed for submitting a pleading "for any *improper purpose* " (emphasis added)); *Bennett v. Jones, Waldo, Holbrook & McDonough,* 2003 UT 9, ¶ 48, 70 P.3d 17 ("The essence of [a cause of action for abuse of process] is a perversion of the process to accomplish some *improper purpose.*" (alteration in original) (emphasis added) (quotations and citation omitted)). We recognize that attorney fees may also be awarded as a sanction for violation of rule 11(b)(2), which requires that claims be "warranted by existing law." Utah R. Civ. P. 11(b)(2). Although the district court found that the Colorado action was "meritless," a violation of rule 11(b)(2) cannot be used as a basis for "[m]onetary sanctions . . . against a represented party." Utah R. Civ. P. 11(c)(2)(A). That is, monetary sanctions for violation of rule 11(b)(2) can only be imposed on counsel for the represented party. *See id.* Thus, any award of attorney fees against Nancy and Charles III under rule 11 necessarily requires a showing of improper purpose. Because the district court's

must be met before the court shall award attorney fees." *Hermes Assocs. v. Park's Sportsman,* 813 P.2d 1221, 1225 (Utah Ct. App.1991).

¶ 17 The key issue in our analysis is whether Nancy and Charles III acted in bad faith in bringing the Colorado action.[7] A party acts in bad faith when one or more of the following factors is present: (i) the party lacks "an honest belief in the propriety of the activities in question"; (ii) the party intends "to take unconscionable advantage of others"; or (iii) the party intends to "hinder, delay, or defraud others." *Valcarce v. Fitzgerald,* 961 P.2d 305, 316 (Utah 1998).

¶ 18 Mi Vida and Mark contend that Nancy and Charles III filed the dissolution action in Colorado to defeat Mi Vida's right under Utah law to buy out dissident shareholders who seek dissolution. *See* Utah Code Ann. § 16–10a–1434 (2001). Colorado law does not provide this right to corporations. However, the district court's findings do not indicate that Nancy and Charles III acted to thwart Mi Vida's buy-out rights. The district court merely found that Nancy and Charles III acted with "an improper purpose," without ever specifying what that purpose was. Given the absence of any facts supporting the finding of bad faith, and mindful that the Colorado court found sufficient merit in the action that it denied Mi Vida's and Mark's motion to dismiss, we conclude that the district court erred in awarding attorney fees incurred in connection with the Colorado action. Therefore, we reduce the district court's award of fees against Nancy in the amount of $60,259.40, and reverse the award against Charles III in the amount of $8,950.55.

### III. Attorney Fees on Appeal

¶ 19 Mi Vida and Mark request attorney fees on appeal pursuant to rule 33 of the Utah Rules of Appellate Procedure. Under that rule, we may award fees if we determine that an appeal "is either frivolous or for delay." Utah R.App. P. 33. Here, because Nancy and Charles III have partially prevailed on the attorney fees issue, their appeal is not frivolous. Therefore, Mi Vida and Mark are not entitled to fees on appeal pursuant to rule 33. *See id.*

### CONCLUSION

¶ 20 The district court correctly determined that Nancy's causes of action involving the Cosmos Claims and the Little and Rodgers Claims were time-barred. Information known by Nancy's attorneys put her on notice of the claims. However, because the facts do not support a finding of bad faith, the district court erred in awarding attorney fees to Mi Vida and Mark for expenses incurred in defending against the dissolution action filed in Colorado. Moreover, Mi Vida and Mark are not entitled to rule 33 fees on appeal. *See id.*

¶ 21 Therefore, we reverse the district court's award of attorney fees incurred in the Colorado action and otherwise affirm the district court's judgment.

¶ 22 WE CONCUR:

CAROLYN B. McHUGH and GREGORY K. ORME, Judges.

---

alternative theories, like section 78–27–56(1), require a showing of some improper motive, which we find absent here, we need not address these theories separately.

7. Because we determine that bad faith was lacking in this case, we need not address whether the Colorado action was without merit.