2016 UT App 189

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JAMES RAPHAEL SANCHEZ,
Appellant.

Opinion
No. 20140749-CA
Filed September 1, 2016

Third District Court, Salt Lake Department
The Honorable Denise P. Lindberg
No. 111903659

John B. Plimpton, Ralph W. Dellapiana, and Teresa
L. Welch, Attorneys for Appellant

Sean D. Reyes and Karen A. Klucznik, Attorneys
for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGE MICHELE M. CHRISTIANSEN concurred. SENIOR JUDGE
RUSSELL W. BENCH concurred except as to Part I, in which he
concurred in the result, with opinion.[1]

VOROS, Judge:

¶1 James Raphael Sanchez appeals his convictions for murder, a first degree felony, and obstruction of justice, a second degree felony. Sanchez beat his girlfriend (Victim) for hours before strangling her. He then attempted to clean the apartment before asking a friend to pick him up. His principal claim on appeal is that the court incorrectly excluded out-of-court

---

1. Senior Judge Russell W. Bench sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

statements that supported his mitigation theory of extreme emotional distress. He also claims that the evidence was insufficient to support his conviction for obstruction of justice. We affirm.

BACKGROUND

¶2 On the morning of May 5, 2011, Sanchez called 911. He refused to identify himself, but told dispatch "there's a woman here, not breathing" at Victim's apartment. When the paramedics arrived at the apartment, they found Victim "badly beaten, [not] breathing, and [with] obvious signs of rigor mortis." Diffuse "deep red, purple" bruising and swelling covered Victim's face. Her nose was fractured. "There was blood in the whites of both of her eyes." The "inner surfaces of her lips" were torn, "as if the lip had been pulled away from the gum." Her neck was bruised, consistent with strangulation. Victim's torso, abdomen, legs, arms, hands, and buttocks also displayed "extensive" bruises "too numerous to count." Eight of her ribs were fractured. Possible bite marks were found on Victim's back and buttocks. Police also found blood throughout the apartment. Some of the blood looked diluted or as if someone had tried to wipe it away.

¶3 Victim's neighbor had been kept awake by "muffled yelling, some grunting, and then some running around here and there, and then . . . a lot of crying, . . . like despair." The sounds continued for at least five hours, but when the neighbor left for work at 8:15 a.m. "it was dead silent." Sanchez told police that he "got into a fight with" Victim that lasted all night. He said "that he slapped her, thumped her, and then he called the cops." When asked to elaborate, he described punching, slapping, kicking, stomping, grabbing, and finally strangling Victim. Sanchez "said that she lost consciousness and that he attempted to revive her on a couple of occasions by breathing for her." He also put Victim's head under running water in an attempt to

revive her. When she lost consciousness for the last time, he lay down next to her and took a nap. When Sanchez woke up and Victim did not, he called a friend, then called 911. He left the apartment, leaving the door open for paramedics and police. His friend drove Sanchez to a convenience store, where Sanchez again called 911. They then went to the friend's house, where Sanchez took off his bloody pants and socks and took a nap.

¶4    At trial, the State introduced an interview between Sanchez and a police detective through the detective's testimony. The interview was audio-recorded and transcribed. In the interview, Sanchez admitted to assaulting Victim. On cross-examination of the detective, Sanchez attempted to elicit testimony that would explain the reason for the assault—that "he started fighting with [Victim] because he thought she was cheating on him with his brother," that "she admitted it and she kept saying it," that "she wouldn't tell [him] that" she would stop the affair, and that Victim's statement "hurt [his] feelings." The trial court excluded the testimony, stating, "If you're seeking to introduce . . . hearsay, unless you can give me an exception, it's not coming in." Sanchez argued, among other things, that the court was required to admit the testimony under rule 106 of the Utah Rules of Evidence. The court determined that rule 106 did not require the court to admit the testimony. Sanchez did not testify at trial.

¶5    Sanchez also moved for a directed verdict on the obstruction-of-justice charge, arguing that the evidence failed to show that he acted with the requisite intent. The trial court denied the motion.

¶6    The jury convicted Sanchez of murder, a first degree felony, and obstruction of justice, a second degree felony. Sanchez appeals.

ISSUES ON APPEAL

¶7     Sanchez contends that under rule 106 of the Utah Rules of Evidence, the trial court was required to admit the part of his police interview in which he explained why he assaulted Victim, because it was necessary to qualify, explain, or place into context the part of the statement in which he confessed to the assault.

¶8     Sanchez also contends that the evidence was insufficient to support his conviction for obstructing justice.

ANALYSIS

I. Utah Rule of Evidence 106

¶9     Sanchez contends that under rule 106 of the Utah Rules of Evidence, the trial court was required to admit the part of his police interview in which he explained why he assaulted Victim, because it was necessary to qualify, explain, or place into context the part of the statement in which he confessed to the assault. Sanchez attempted to introduce the part of his statement in which he told police that "he started fighting with [Victim] because he thought she was cheating on him with . . . his brother." He said "this enraged him," that Victim "admitted it and she kept saying it," and that it "hurt [his] feelings."

¶10    Rule 106 of the Utah Rules of Evidence "permits introduction of an otherwise inadmissible statement if the opposing party introduces a portion of the statement." *State v. Jones*, 2015 UT 19, ¶ 40, 345 P.3d 1195.

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.

Utah R. Evid. 106. The rule "serves a protective function to prevent a misleading impression created by taking matters out of context." *Jones*, 2015 UT 19, ¶ 40 (citation and internal quotation marks omitted).

¶11 We "review a trial court's decision to admit or exclude specific evidence for an abuse of discretion." *Id.* ¶ 12 (citation and internal quotation marks omitted). "In circumstances where evidence should have been admitted, it is reviewed for harmless error." *State v. Colwell*, 2000 UT 8, ¶ 26, 994 P.2d 177. "If it is reasonably likely a different outcome would result with the introduction of the evidence and confidence in the verdict is undermined, then exclusion is harmful." *Id.*

¶12 We first consider whether the trial court erred when it excluded Sanchez's statement under the fairness standard of rule 106. Because we conclude that the court exceeded its discretion when it excluded the statement under the fairness standard, we then consider whether Sanchez's statement was hearsay and, if so, whether rule 106 creates a hearsay exception. And because we conclude that rule 106 does create a hearsay exception, we then consider whether the erroneous exclusion of the statement was harmless.

A.     The Fairness Standard

¶13 Rule 106 allows a party to admit the balance of a written or recorded statement "that in fairness ought to be considered at the same time" as the rest of the statement. Utah R. Evid. 106. The rule "establishes a fairness standard that requires admission of those things that are relevant and necessary to qualify, explain, or place into context the portion already introduced." *Jones*, 2015 UT 19, ¶ 40 (citation and internal quotation marks omitted). "It thus serves a protective function to prevent a misleading impression created by taking matters out of context." *Id.* (citation and internal quotation marks omitted). "The trial court has considerable discretion in determining issues of

fairness . . . ." *State v. Leleae*, 1999 UT App 368, ¶ 45, 993 P.2d 232. "In determining whether a disputed portion of a statement must be admitted [under the federal version of rule 106], the trial court should consider whether (1) it explains the admitted evidence, (2) places the admitted evidence in context, (3) avoids misleading the jury, and (4) insures fair and impartial understanding of the evidence." *United States v. Lopez-Medina*, 596 F.3d 716, 735 (10th Cir. 2010) (citation and internal quotation marks omitted).[2]

¶14     The trial court here ruled that "the fairness analysis does not require the admission of [Sanchez's] statements offered to explain the reasons for his brutal assault on the victim," because the explanation was "a self-serving, after-the-fact explanation." The court also ruled that the fairness standard did not require the admission of Sanchez's explanation, because it was "temporally removed"—separated by sixteen pages in the transcript—from the confession introduced by the prosecution. Sanchez argues that "neither of these reasons is valid for excluding evidence offered under rule 106."

¶15     In ruling that the fairness standard did not require the admission of a self-serving explanation, the trial court relied on this court's opinion in *Leleae*, 1999 UT App 368. In *Leleae*, the trial court ruled that fairness did not require admission of a statement where "the statement was merely self-serving." *Id.* ¶ 45. We

---

2. Utah appellate courts have had little occasion to consider rule 106. *See State v. Jones*, 2015 UT 19, ¶¶ 40–42, 345 P.3d 1195; *State v. Leleae*, 1999 UT App 368, ¶¶ 42–46, 993 P.2d 232; *see also State v. Cruz-Meza*, 2003 UT 32, ¶¶ 9–14, 76 P.3d 1165 (comparing rule 106 to "the doctrine of oral completeness" under rule 611). However, Utah Rule of Evidence 106 "is the federal rule, verbatim," Utah R. Evid. 106 advisory committee note, so "we look to federal cases interpreting Rule 106 as persuasive but not necessarily binding authority," *Leleae*, 1999 UT App 368, ¶ 43 n.5.

concluded that the trial court had not abused its discretion, but we did so noting that although the statement had been excluded, "the jury heard testimony that supported defendant's version of the incident and put the admitted portion of defendant's statement in context." *Id.* The statement that the defendant sought to admit under rule 106 was therefore not "necessary to qualify, explain, or place into context the portion already introduced," *Jones*, 2015 UT 19, ¶ 40 (citation and internal quotation marks omitted), because other admitted testimony served to place the testimony into context. *Leleae*, 1999 UT App 368, ¶ 45.

¶16    That is not the case here. Because Sanchez did not testify, no other testimony presented his explanation that "he started fighting with [Victim] because he thought she was cheating on him with . . . his brother." Moreover, "[t]here is no legal principle which excludes statements or conduct of a party solely on the ground they are self-serving. If otherwise admissible, a party has as much right to his own evidence as to the evidence of any other witness." *State v. Johnson*, 671 P.2d 215, 216 (Utah 1983) (per curiam).[3] *But cf. Glauser Storage, LLC v. Smedley*, 2001 UT App 141, ¶ 24, 27 P.3d 565 ("Even where testimony is uncontroverted, a trial court is free to disregard such testimony if it finds the evidence self-serving and not credible." (citation and internal quotation marks omitted)). Although the statement was self-serving, fairness required that Sanchez be allowed "to qualify, explain, or place into context" the portion of his confession introduced by the detective's testimony. *See Jones*, 2015 UT 19, ¶ 40 (citation and internal quotation marks omitted).

---

3. The trial court ruled that Victim's statement was inadmissible hearsay. But as we discuss below, *see infra* ¶ 21, Victim's statement was not offered for the truth of the matter asserted and was therefore not hearsay.

¶17   The trial court also ruled that Sanchez's statement "was temporally removed from the inculpatory statements that had been received without objection." The court explained that it believed rule 106 and the rule of completeness were implicated "when there is a fragment of a sentence, or a fragment of a paragraph, that is being introduced, but in fairness, to get a full context of that—of the import of that limited statement, the whole statement should be read, then that's when the Rule of Completeness applies." The court concluded with, "I do not believe that it's implicated when we are addressing parts of an interview that are, as was represented to me, twenty or more pages apart . . . ." Sanchez argues that "the touchstone of rule 106 is fairness without regard to the temporal proximity of the pertinent parts of the statement."

¶18   We agree with Sanchez. Rule 106 allows a party to introduce "any other part" of a recorded statement that qualifies, explains, or places into context a statement introduced by the opposing party. *See* Utah R. Evid. 106. The rule does not limit the adverse party to "a fragment of a sentence" or "a fragment of a paragraph." "Underlying Rule 106 [of the Federal Rules of Evidence] . . . is a principle of fairness requiring the introduction of an entire or related document if necessary for the fair and impartial understanding of the admitted portion or document." *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 102 (2d Cir. 1995) (citation and internal quotation marks omitted). Determining what must be admitted in fairness under rule 106 "becomes a line-drawing exercise, to be conducted case by case." *United States v. Boylan*, 898 F.2d 230, 256 (1st Cir. 1990) (applying the federal analogue of our rule 106). We conclude that in this case, the trial court drew that line unreasonably close to the portion of the record already admitted. Sanchez's explanation for the assault was part of the same interview with the same detective and, even if it had been given at a later point, qualified his confession.

¶19   Having concluded that the trial court exceeded its discretion by not admitting Sanchez's statement under rule 106's

fairness standard, we now turn to the question of whether that same standard allows the admission of otherwise inadmissible hearsay.

B.    Hearsay Exception

¶20    Sanchez contends that the trial court erred when it excluded his statement as "double hearsay," or hearsay within hearsay. Sanchez sought to admit his statement to police about what Victim had said to him—that Victim "admitted" she was cheating on him with his brother and that "she kept saying it." He argues that his statement did not constitute double hearsay because Victim's statement is not hearsay. Victim's statement is not hearsay, he reasons, "because it was not offered for the truth of the matter asserted in it." "Whether a statement is offered for the truth of the matter asserted is a question of law, which we review under a correction of error standard." *State v. Haltom*, 2005 UT App 348, ¶ 8, 121 P.3d 42 (citation and internal quotation marks omitted). He further argues that his statement was admissible hearsay under rule 106 of the Utah Rules of Evidence. We "review a trial court's decision to admit or exclude specific evidence for an abuse of discretion." *State v. Jones*, 2015 UT 19, ¶ 12, 345 P.3d 1195 (citation and internal quotation marks omitted).

¶21    Hearsay, as defined by the Utah Rules of Evidence, is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Utah R. Evid. 801(c). "However, if an out-of-court statement is offered simply to prove that it was made, without regard to whether it is true, such testimony is not proscribed by the hearsay rule." *State v. Olsen*, 860 P.2d 332, 335 (Utah 1993) (citation and internal quotation marks omitted). "Often statements of this type merely reveal people's motives for later actions." *State v. McNeil*, 2013 UT App 134, ¶ 48, 302 P.3d 844, *aff'd*, 2016 UT 3, ¶ 46, 365 P.3d 699. Sanchez argues, and we agree, that he attempted to offer

Victim's statement "simply to prove that it was made," *see Olsen*, 860 P.2d at 335 (citations and internal quotation marks omitted), and not to prove that Victim was in fact cheating on Sanchez with his brother. Accordingly, the trial court erred when it ruled that Victim's statement to Sanchez—the statement within Sanchez's own hearsay statement—was hearsay.

¶22   Sanchez concedes that his statement to police was hearsay, but argues that it was "admissible hearsay under Rule 106." In other words, Sanchez contends that a portion of a recorded statement that "in fairness ought to be considered" under rule 106 need not also satisfy the hearsay rule. *See* Utah R. Evid. 106. Although this is not the first time the question has been presented to a Utah appellate court, no Utah court has decided it. *See Jones*, 2015 UT 19, ¶ 41. We now conclude that rule 106 allows the admission of otherwise inadmissible hearsay if under the fairness standard the evidence should be considered.

¶23   The state and federal rule 106 is at minimum a rule of timing. *See* Fed. R. Evid. 106 advisory committee note ("The rule is based on two considerations . . . . The second is the inadequacy of repair work when delayed to a point later in the trial."). *See, e.g., United States v. Adams*, 722 F.3d 788, 826 (6th Cir. 2013); *United States v. Sutton*, 801 F.2d 1346, 1368 (D.C. Cir. 1986); *Sipary v. State*, 91 P.3d 296, 300 (Alaska Ct. App. 2004). "Because admitting the curative evidence later in the trial may not be adequate to remedy the effect of the misleading impression, Rule 106 authorizes a party to interrupt the proceedings to have the curative evidence introduced immediately." *United States v. Holden*, 557 F.3d 698, 705 (6th Cir. 2009). Courts that read rule 106 solely as a rule of timing focus on the final provision of the rule that allows the adverse party to complete a statement or place a statement into context "at the same time" as the original evidence. *See, e.g., United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982) ("Rule 106 is intended to eliminate the misleading impression created by taking a statement out of context. The rule

covers an order of proof problem; it is not designed to make something admissible that should be excluded.").

¶24   We now consider whether Utah's version of rule 106 is also a rule of admissibility; that is, whether it can "overcome rule 802's prohibition against hearsay." *Jones*, 2015 UT 19, ¶ 41. Courts are about equally divided on whether rule 106 operates to admit otherwise inadmissible hearsay. *See id.* ¶ 41 n.56.[4]

---

4. By our count, four federal circuit courts of appeals read rule 106 to admit otherwise inadmissible hearsay. *See, e.g., United States v. Harry*, 816 F.3d 1268, 1279–80 (10th Cir. 2016); *United States v. Bucci*, 525 F.3d 116, 133 (1st Cir. 2008); *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007); *United States v. Sutton*, 801 F.2d 1346, 1368 (D.C. Cir. 1986). Five circuits do not read rule 106 to admit otherwise inadmissible hearsay. *See, e.g., United States v. Hassan*, 742 F.3d 104, 134 (4th Cir. 2014); *United States v. Vargas*, 689 F.3d 867, 876 (7th Cir. 2012); *United States v. Ramos-Caraballo*, 375 F.3d 797, 803 (8th Cir. 2004); *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996); *United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982). Of the five circuits that have appeared to hold that the rule of completeness does not trump other restrictions on the admissibility of evidence, at least four have done so only in dicta. Michael A. Hardin, *This Space Intentionally Left Blank: What To Do When Hearsay and Rule 106 Completeness Collide*, 82 Fordham L. Rev. 1283, 1312 (2013) ("A particular pattern emerges in these cases. Courts of this view often state that Rule 106 cannot render inadmissible remainders admissible, but then go on to find other reasons not to admit the remainder[.]"). "The Supreme Court [has] ducked this issue by holding that whether or not it was usable under Rule 106 [of the Federal Rules of Evidence], a party could introduce the remainder of a truncated letter as part of his own case under the common law completeness doctrine." Charles Alan Wright and Kenneth W. Graham, Jr., 21A *Federal Practice and Procedure*

(continued…)

¶25 We begin with the language of the rule. *See State v. Vessey*, 957 P.2d 1239, 1240 (Utah Ct. App. 1998) (per curiam) ("When the language of a rule or statute is unambiguous, Utah courts have consistently held the rule's plain language must be followed.").The rule states that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Utah R. Evid. 106. The key term is *introduction*. Does the adverse party's right to *require the introduction* of the omitted evidence mean that the adverse party has a right to insist that it merely be offered into evidence, or that it also be admitted into evidence? In context, we read the term *introduce* as synonymous with *admit*. Black's Law Dictionary defines "introduce into evidence" as "[t]o have (a fact

---

(…continued)
§ 5078.1 (2d ed. 2016) (citing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170–73 (1988)).

The states are similarly divided. *Compare Liftee v. Boyer*, 117 P.3d 821, 833 (Haw. Ct. App. 2004) (stating that rule 106 allows for the admission of otherwise inadmissible evidence); *Nickell v. Russell*, 614 N.W.2d 349, 355 (Neb. 2000) (same); *Walters v. State*, 247 S.W.3d 204, 217–18 (Tex. Crim. App. 2007) (same); *State v. Gray*, 511 S.E.2d 873, 876–77 (W. Va. 1998) (same); *State v. Eugenio*, 579 N.W.2d 642, 651–52 (Wis. 1998) (same); *Hayes v. State*, 935 P.2d 700, 706 (Wyo. 1997) (same), *with Stoneking v. State*, 800 P.2d 949, 951–52 (Alaska Ct. App. 1990) (stating that rule 106 does not make admissible an otherwise inadmissible statement); *Banther v. State*, 823 A.2d 467, 487 (Del. 2003) (same); *McAtee v. Commonwealth*, 413 S.W.3d 608, 630 (Ky. 2013) (same); *Simmons Oil Corp. v. Wells Fargo Bank, N.A.*, 1998 MT 129, ¶ 30, 960 P.2d 291 (same); *State v. Holmes*, 602 N.E.2d 1197, 1199 (Ohio Ct. App. 1991) (same); *State v. Tooley*, 333 P.3d 348, 357–58 (Or. Ct. App. 2014) (same).

or object) admitted into the trial record, allowing it to be considered by the jury or the court in reaching a decision." *Introduce Into Evidence*, Black's Law Dictionary (10th ed. 2014). Other rules of admissibility similarly use *introduce* synonymously with *admit. See, e.g.*, Utah R. Evid. 410; *id.* R. 602; *id.* R. 612. Also, judicial opinions typically use the phrase *introduce into evidence* to mean *introduce and have admitted into evidence. See, e.g., State v. Mahi*, 2005 UT App 494, ¶ 17, 125 P.3d 103 (stating that a litigant "cannot *introduce* potentially inflammatory evidence and then later complain when the opposing party attempts to rebut it" (emphasis added)). Furthermore, a contrary reading of the word *introduce* would allow the adverse party to require merely that the additional portion of the statement be offered, but would not require the court to admit it, rendering the right granted by the rule all but illusory.

¶26 When considering the relation of the analogous federal rule 106's relation to inadmissible hearsay, the United States Court of Appeals for the District of Columbia Circuit observed that the rule "is found not in Rule 611, which governs the 'Mode and Order of Interrogation and Presentation,' but in Article I, which contains rules that generally restrict the manner of applying the exclusionary rules." *Sutton*, 801 F.2d at 1368 (citation omitted). The court also noted that "every major rule of exclusion . . . contains the proviso, 'except as otherwise provided by these rules,' which indicates 'that the draftsmen knew of the need to provide for relationships between rules and were familiar with a technique for doing this.'" *Id.* (citation omitted). But "[t]here is no such proviso in Rule 106, which indicates that Rule 106 should not be so restrictively construed." *Id.*

¶27 This reasoning applies equally to Utah's version of rule 106, and we find it persuasive. Utah Rule of Evidence 106 appears in Article I, titled "General Provisions," and not rule 611, which governs "mode and order of examining witnesses and presenting evidence." The drafters of the Utah Rules of

Evidence also established relationships between the rules through the use of phrases such as "if the statement is otherwise admissible under the law" and "if the evidence is otherwise admissible under these rules." *See, e.g.,* Utah R. Evid. 412(b); *id.* R. 616. But Utah rule 106 lacks such a proviso.

¶28　Rule 807 of the Utah Rules of Evidence also supports our conclusion that rule 106 operates to create a hearsay exception. Rule 807 provides that "a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception" so long as it falls into certain broad categories, such as if "admitting it will best serve the purposes of these rules and the interests of justice." Utah R. Evid. 807(a). Sanchez does not rely on rule 807's residual hearsay exception or claim that he satisfied the notice requirements of rule 807(b). But it is difficult to see how a statement that in fairness ought to be considered would not serve the interests of justice, or why a proponent of one portion of a recorded statement would need notice of another portion of the same statement.

¶29　Finally, treatises on the Utah Rules of Evidence advise that "[i]f a party offers a portion of prior testimony, then the opposing party should be entitled to offer any additional portion of the testimony that would qualify or explain the admitted portion, even if the omitted portion would otherwise be inadmissible as hearsay or an improper opinion." R. Collin Mangrum & Dee Benson, *Mangrum & Benson on Utah Evidence* 67 (2015); Edward Kimball & Ronald Boyce, *Utah Evidence Law* 1-36, 1-37 (2d ed. 2004) ("The rule is sometimes said not to allow admission of otherwise inadmissible evidence, but if the objectionable evidence (for example, hearsay) is needed to provide context and understanding, fairness seems to require its admission."). *See also McCormick on Evidence* § 56 (7th ed. 2016) (footnotes omitted) ("At least when the other passage of the writing or statement is so closely connected to the part the proponent contemplates introducing that it furnishes essential

context for that part, the passage becomes admissible on a nonhearsay theory."); Faust F. Rossi, *Evidence: 1999–2000 Survey of New York Law*, 51 Syracuse L. Rev. 489, 498–99 (2001) (explaining that although a number of states hold that the explanatory portion of a statement may be admitted under the rule of completeness only if it is otherwise admissible, that "approach makes little sense. If the explanation required to prevent distortion must be admissible independent of its corrective function, then the purpose of the rule of completeness is defeated.").

¶30    In sum, we believe the purpose and scope of rule 106 extend beyond timing and order of proof. A rule that focuses on fairness "can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence when the court finds in fairness that the proffered evidence should be considered contemporaneously." *Sutton*, 801 F.2d at 1368. We therefore conclude that the "fairness principle can override the rule excluding hearsay." *United States v. Harry*, 816 F.3d 1268, 1279–80 (10th Cir. 2016).[5] "Even if the [statement] would be

---

5. The concurrence cites the reasoning of circuit courts that have held that if rule 106 is a rule of admissibility, a criminal defendant "would be 'able to place his exculpatory statements before the jury without subjecting [himself] to cross-examination, precisely what the hearsay rule forbids.'" *Infra* ¶ 54 (alteration in original) (quoting *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000). But rule 106 is not a backdoor to admit any exculpatory statement by a defendant; rather, rule 106 admits only those portions of written or recorded statements that in fairness ought to be admitted. "The contours of the fairness standard are rather vague and courts have enormous discretion in applying the rule." *United States v. Harry*, 816 F.3d 1268, 1280 (10th Cir. 2016) (citations and internal quotation marks omitted). "The rule does not . . . require the admission of

(continued…)

subject to a hearsay objection, that does not block its use when it is needed to provide context for a statement already admitted." *United States v. Lopez-Medina*, 596 F.3d 716, 735 (10th Cir. 2010).[6]

¶31 Because we have concluded that, in fairness, Sanchez's statement should have been admitted by the trial court, and further that the hearsay rule does not prohibit its admission, we now determine whether the exclusion of the statement was, as the State additionally contends, harmless error. *See State v. Colwell*, 2000 UT 8, ¶ 26, 994 P.2d 177.

---

(…continued)

portions of a statement that are neither explanatory of nor relevant to the admitted passages." *United States v. Kopp*, 562 F.3d 141, 144 (2d Cir. 2009) (citation and internal quotation marks omitted). *See, e.g.*, *United States v. Gramajo*, 565 F. App'x 723, 728 (10th Cir. 2014) (holding the district court properly excluded defendant's statement that did not "explain or clarify" the admitted statements); *United States v. Gonzalez*, 399 F. App'x 641, 645 (2d Cir. 2010) (holding that "the rule of completeness is not a mechanism to bypass hearsay rules for any self-serving testimony" and that "[i]t was within the district court's discretion to conclude that the admitted portion of [defendant's] statements did not distort the meaning of the full statement or exclude information that was substantially exculpatory"); *United States v. Johnson*, 507 F.3d 793, 797 (2d Cir. 2007) (concluding that "the redacted statements were neither explanatory of nor relevant to the admitted passages . . . and the District Court therefore did not err in refusing to admit them" (citation and internal quotation marks omitted)).

6. We do not address any potential interplay between rule 106 and the Confrontation Clause, as this case does not present that issue.

C.     Harmless Error

¶32     "In circumstances where evidence should have been admitted, it is reviewed for harmless error." *Id.* "Based upon the concept that the trial court is best situated to determine what, if any, impact an alleged error will have on the proceedings, . . . we will reverse only where an error is so prejudicial and so substantial that, absent the error, it is reasonably probable that the result would have been more favorable for the defendant." *State v. Thomas*, 1999 UT 2, ¶ 26, 974 P.2d 269 (citations omitted). "In other words, the 'mere possibility' of a different outcome occurring without the evidence is not enough; instead, 'the likelihood of a different outcome must be sufficiently high to *undermine confidence in the verdict*.'" *Id.* (emphasis in original) (quoting *State v. Knight*, 734 P.2d 913, 920 (Utah 1987)).

¶33     A different standard of harm applies to federal constitutional error. If a defendant preserves a claim of federal constitutional error at trial and establishes a constitutional violation on appeal, the burden shifts to the State to demonstrate that the error was harmless beyond a reasonable doubt. *State v. Clark*, 2016 UT App 120, ¶ 8, __ P.3d __ (citing *State v. McCallie*, 2016 UT App 4, ¶ 12, 369 P.3d 103 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 630 (1993); *Chapman v. California*, 386 U.S. 18, 24 (1967); and *State v. Calliham*, 2002 UT 86, ¶ 45, 55 P.3d 573)). This is known as the *Chapman* standard, after the United States Supreme Court case that announced it. Sanchez contends that the rule 106 error at issue here was harmful under either the *Chapman* standard applicable to federal constitutional error or the ordinary standard applicable to non-constitutional error.[7]

_____

7. Utah courts have not determined whether the harmless-beyond-a-reasonable-doubt standard applies to violations of the Utah Constitution. *See State v. Bell*, 770 P.2d 100, 106 n.12 (Utah 1988) (noting that "this Court has never squarely decided

(continued…)

¶34 First, Sanchez claims the benefit of the *Chapman* standard. He argues that the trial court's exclusion of his rule 106 statement "was prejudicial because it precluded [him] from presenting his theory of the case," which was that "he was entitled to special mitigation because he killed [Victim] under the influence of extreme emotional distress for which there was a reasonable explanation or excuse." He further argues, citing *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006), and *State v. McCullar*, 2014 UT App 215, ¶¶ 53–59, 335 P.3d 900, that the error rose to constitutional proportion because it "deprived [him] of his due process right to present a complete defense." Consequently, he reasons, the error requires reversal unless this court concludes that it was harmless beyond a reasonable doubt. *See Chapman*, 386 U.S. at 24; *Calliham*, 2002 UT 86, ¶ 45. In effect, Sanchez attempts to elevate a single rule 106 violation, which affected the application of the special mitigation statute, to federal constitutional status.

¶35 We reject this contention for two independent reasons. First, any claim of federal constitutional error is unpreserved. To preserve an issue for appeal, "the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (citation and internal quotation marks omitted). Sanchez does not claim to have alerted the trial court that denying his rule 106 motion would deprive him of his "due process right to present a complete defense." On the contrary, he told the court, "I don't think that without that evidence, the defense has a basis to argue special mitigation . . . I do have an alternative defense." Just as an objection based on the federal

_____

(…continued)
whether violations of the Utah Constitution must be addressed under the federal constitutional standard of 'harmless beyond a reasonable doubt'").

constitution does not preserve a claim of state constitutional error, *see State v. Worwood*, 2007 UT 47, ¶ 19, 164 P.3d 397, an objection based on state law does not preserve a claim of federal constitutional error. Preservation requires an appellant to "present the legal basis for her claim to the trial court, not merely the underlying facts or a tangentially related claim." *State v. Kennedy*, 2015 UT App 152, ¶ 20, 354 P.3d 775. "[I]n general, appellate courts will not consider an issue, including constitutional arguments, raised for the first time on appeal unless the trial court committed plain error or the case involves exceptional circumstances." *State v. Dean*, 2004 UT 63, ¶ 13, 95 P.3d 276. Sanchez claims neither exception to the preservation rule here.

¶36    Second, Sanchez has not demonstrated that the denial of the benefit of special mitigation constitutes a denial of his federal due process right to present a complete defense.[8] As relevant here, "[s]pecial mitigation exists when the actor causes the death of another . . . under the influence of extreme emotional distress for which there is a reasonable explanation or excuse." Utah Code Ann. § 76-5-205.5(1) (LexisNexis 2012). "The reasonableness of an explanation or excuse . . . shall be determined from the viewpoint of a reasonable person under the then existing circumstances." *Id.* § 76-5-205.5(4). "If a jury is the trier of fact, a unanimous vote of the jury is required to establish the existence of special mitigation." *Id.* § 76-5-205.5(6)(a).

¶37    In *State v. Drej*, our supreme court rejected a due process challenge to the special mitigation statute. *See* 2010 UT 35, ¶ 21 233 P.3d 476. In *Drej*, the defendant argued that the special mitigation statute was unconstitutional "because it places the

_____

8. In fact, he has cited no case from any jurisdiction supporting his claim that *Holmes* error requires application of the *Chapman* standard. Neither the United States Supreme Court in *Holmes* nor this court in *McCullar* recited the *Chapman* standard.

burden of proving special mitigation on the defendant, in violation of the due process clauses of the state and federal constitutions." *Id.* ¶ 1. Our supreme court held that "the legislature elected to require the defendant to prove special mitigation by a preponderance of the evidence." *Id.* ¶ 21; *see* Utah Code Ann. § 76-5-205.5(5)(a), (b)(iii). "As special mitigation is not a defense to the underlying primary charge of murder, it cannot run afoul of the federal constitution or state law." *Drej*, 2010 UT 35, ¶ 21.

¶38   Sanchez has not explained, nor is it obvious, why depriving a defendant of the benefit of a statute that is not a defense to the underlying primary charge of murder deprives him of his federal due process right to present a complete defense. Nor has he explained how depriving him of the benefit of special mitigation could violate federal due process when, in rejecting a due process challenge, our supreme court held that special mitigation "cannot run afoul of the federal constitution." *Id.*

¶39   In sum, Sanchez has not shown that federal due process requires application of the *Chapman* standard here. We thus proceed under the usual standard for assessing harm as set forth above.

¶40   Under the special mitigation statute, "the fact finder must determine whether (1) subjectively, the defendant committed the killing while under the influence of extreme emotional distress, and (2) objectively, a reasonable person would have experienced an extreme emotional reaction and loss of control under the circumstances." *Ross v. State*, 2012 UT 93, ¶ 28, 293 P.3d 345. A person acts under the influence of extreme emotional distress "when he is exposed to extremely unusual and overwhelming stress that would cause the average reasonable person under the same circumstances to experience a loss of self-control, and be overborne by intense feelings, such as passion, anger, distress, grief, excessive agitation, or other similar emotions." *State v.*

*White*, 2011 UT 21, ¶ 26, 251 P.3d 820 (citation and internal quotation marks omitted).[9]

¶41    "This standard requires a trier of fact to put herself in the shoes of a reasonable person in the defendant's situation to determine whether the defendant's reaction to a series of events was reasonable." *Id.* ¶ 37. "The standard is not whether the defendant thought her reaction was reasonable, but whether a

---

9. What is generally known as the provocation defense has for two decades been criticized as mitigating violence committed by men against women in intimate relationships. It now "is one of the most controversial doctrines in the criminal law because of its perceived gender bias; yet most American scholars and lawmakers have not recommended that it be abolished." Carolyn B. Ramsey, *Provoking Change: Comparative Insights on Feminist Homicide Law Reform*, 100 J. Crim. L. & Criminology 33, 33 (2010). *See also* Emily L. Miller, *(Wo)manslaughter: Voluntary Manslaughter, Gender, and the Model Penal Code*, 50 Emory L.J. 665, 667 (2001) ("Voluntary manslaughter has never been a female-friendly doctrine."); Victoria Nourse, *Passion's Progress: Modern Law Reform and the Provocation Defense*, 106 Yale L.J. 1331, 1322 (1997) ("Our most modern and enlightened legal ideal of 'passion' reflects, and thus perpetuates, ideas about men, women, and their relationships that society long ago abandoned."); Laurie J. Taylor, *Provoked Reason in Men and Women: Heat-of-Passion Manslaughter and Imperfect Self-Defense*, 33 UCLA L. Rev. 1679, 1679 (1986) ("[T]he legal standards that define adequate provocation and passionate 'human' weaknesses reflect a male view of understandable homicidal violence."). We note that Utah Code section 76-5-205.5 is cast in gender-neutral terms and has been so applied by our courts. *See, e.g.*, *State v. White*, 2011 UT 21, ¶ 1, 251 P.3d 820.

reasonable person facing the same situation would have reacted in a similar way." *Id.*[10]

¶42    Sanchez argues that "he was entitled to special mitigation because he assaulted [Victim] under extreme emotional distress caused by her repeatedly telling him that she was cheating on him with his brother." To establish the requisite extreme emotional distress, Sanchez sought to admit his statement to police that "he started fighting with [Victim] because he thought she was cheating on him with . . . his brother." He said "this enraged him," that Victim "admitted it and she kept saying it," and "that hurt [his] feelings."

¶43    We are not persuaded that Sanchez has shown a reasonable probability that, with this evidence, he could have met his burden of proving the requisite extreme emotional distress under the *White* standard. Even though he was "enraged" and his feelings were hurt, the special mitigation standard, as explained, "requires a trier of fact to put herself in the shoes of a reasonable person in the defendant's situation to determine whether the defendant's reaction to a series of events was reasonable." *Id.* "The standard is not whether the defendant thought her reaction was reasonable, but whether a reasonable

---

10. The "similar way" standard hews a middle course between competing approaches to what is generally known as the provocation defense. Under the more prosecution-friendly view, adequate provocation exists only if "a reasonable person would have killed under the same circumstances (sometimes called 'act reasonableness')." Aya Gruber, *A Provocative Defense*, 103 Cal. L. Rev. 273, 275 (2015). Under the more defense-friendly view, adequate provocation exists if "a reasonable person would have been provoked to act rashly (sometimes called 'emotion reasonableness')." *Id.* We understand the "similar way" standard to require more than "emotion reasonableness" yet less than "act reasonableness."

person facing the same situation would have reacted in a similar way." *Id.*

¶44   We do not agree with Sanchez that a reasonable person, hearing that his or her romantic partner was cheating with his or her sibling, would have reacted "in a similar way." Sanchez beat Victim for at least five, and probably over nine, hours. He described punching, slapping, kicking, stomping, grabbing, and ultimately strangling Victim. As a result, Victim was "badly beaten." Her face was bruised and swollen. Her nose was fractured. There was blood in the whites of both of her eyes. Her lips were torn, "as if the lip had been pulled away from the gum." The bruises on her body were "too numerous to count" and the bruises on her neck were consistent with strangulation. During the course of the extended attack Victim lost consciousness more than once and, according to Sanchez, he tried to revive her by "breathing for her" and putting her head under running water. Although the attack began the night before, Victim lost consciousness for the last time when he strangled her around 8 or 9 o'clock in the morning. He tried a headlock, but in his words, that "wasn't having much effect." He then tried placing his elbow in her throat, again without success. Finally he used his forearm across the front of her neck and leaned into her. Although she "was just screaming," this method finally succeeded. She blacked out and never regained consciousness.

¶45   Two factors distinguish this murder: the extended period of torture leading up to the final suffocating blow and the calculation with which Sanchez admits he administered that blow. As stated above, the jury should have heard that Sanchez told police that Victim hurt his feelings and enraged him when she would not stop saying that she was cheating on him with his brother. But we see no reasonable probability that, had the jury heard that Sanchez had told this to police, the jury would have found by a preponderance of the evidence that a reasonable person facing the same situation would have reacted similarly.

¶46　We conclude that although the excluded portion of Sanchez's hearsay statement should have been admitted under rule 106, the exclusion was harmless. We therefore affirm Sanchez's conviction for murder.[11]

## II. Obstruction of Justice

¶47　Sanchez contends that "the evidence was insufficient to support [his] conviction for obstructing justice because no reasonable jury could have found beyond a reasonable doubt that [he] concealed, removed, or destroyed evidence specifically intending to hinder the investigation of [Victim's] murder." "When a jury verdict is challenged on the ground that the evidence is insufficient, . . . we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury." *State v. Hamilton*, 827 P.2d 232, 236 (Utah 1992) (brackets, citation, and internal quotation marks omitted). "We reverse a jury conviction for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that

---

11. The State also argues that Sanchez suffered no harm here because, although the trial court excluded his recorded police statement, he could nevertheless have testified to the facts that he claims sparked his extreme emotional distress. In support of its argument, the State cites *State v. Cruz-Meza*, 2003 UT 32, ¶¶ 16–17, 76 P.3d 1165. In the related context of the oral completeness rule, our supreme court held that exclusion of the defendant's hearsay statements did not deprive the defendant of his right to present special mitigation where he "was entirely free to choose" to testify himself. *Id.* ¶ 17. Sanchez responds that testifying would have done him no good here, because the trial court had already ruled that Victim's statement that she had cheated on him with his brother was inadmissible double hearsay. Because we resolve the question of harm on other grounds, we need not address this issue further.

---

reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted." *Id.* (citation and internal quotation marks omitted).

¶48 "An actor commits obstruction of justice if the actor, with intent to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding conduct that constitutes a criminal offense . . . alters, destroys, conceals, or removes any item or other thing." Utah Code Ann. § 76-8-306(1)(c) (LexisNexis 2012).

¶49 Sanchez advances a subtle, time-based theory for why the evidence does not support his conviction for obstruction of justice. Sanchez argues that he "could be convicted of obstructing justice only if he concealed, removed, or destroyed evidence specifically intending to hinder the investigation of [Victim's] murder." He acknowledges evidence of his having cleaned up the crime scene—for example, that he wiped the walls with water and chemicals and washed blood down the drain. But he stresses that the prosecution produced "no evidence of when" he did these acts—specifically, evidence that he did them "after she died." And if she was still alive when he concealed the evidence of his criminal conduct, he reasons, he did not commit the crime of obstruction of justice: "Even if one could reasonably infer that [Sanchez] at some point planned to ultimately kill [Victim]," he maintains, "the evidence purporting to show that [Sanchez] cleaned [Victim] and the apartment *before* she died is insufficient to show that he concealed evidence specifically intending to hinder the investigation *of her murder*." (Emphasis added.)

¶50 Sanchez reads the statute too narrowly. He committed the crime of obstruction of justice if, with intent to hinder the investigation of himself regarding conduct that constitutes "a criminal offense," he concealed or removed anything. *See* Utah Code Ann. § 76-8-306(1)(c). The statute requires only that he intended to hinder investigation of a crime; nothing in the

statute requires an exact identity between the crime he sought to conceal and the crime for which he was eventually convicted.

¶51 We therefore conclude that there was sufficient evidence to convict Sanchez of obstructing justice.

CONCLUSION

¶52 For the foregoing reasons, the judgment of the trial court is affirmed.

————————

BENCH, Senior Judge (concurring in part and concurring in the result in part):

¶53 I concur in the majority opinion except as to Part I, in which I concur only in the result. In my view, the trial court did not exceed its discretion when it excluded Sanchez's statement. The main opinion acknowledges that, nationally, courts are equally divided on whether rule 106 operates to require the admission of otherwise inadmissible hearsay. *See supra* ¶ 24 & note 4. I would hold that the trial court properly exercised its discretion in excluding Sanchez's statement, and thus I would avoid a discussion of harmless error in this case.

¶54 When a party offers his own out-of-court declaration for its truth, that declaration must satisfy the hearsay rule. Several courts have held that the federal equivalent of rule 106 does not alter that requirement. *See, e.g., United States v. Hassan*, 742 F.3d 104, 134 (4th Cir. 2014) (stating that federal rule 106 "does not render admissible . . . evidence which is otherwise inadmissible under the hearsay rules" (omission in original) (citation and internal quotation marks omitted)); *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996) (noting that federal rule 106 "does not compel admission of otherwise inadmissible hearsay

evidence" (citation and internal quotation marks omitted)). Otherwise, as these courts have explained, a criminal defendant would be "able to place his exculpatory statements before the jury without subjecting [himself] to cross-examination, precisely what the hearsay rule forbids." *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (alteration in original) (citation and internal quotation marks omitted).

¶55   I would follow the lead of these courts and hold that before hearsay is admissible under rule 106, its proponent must show that it fits within an exception to the hearsay rule. Because Sanchez concedes that his statement was hearsay and has not shown that it fits within an exception, I would affirm the trial court's ruling.

───────────