**2017 UT App 110**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JOSHUA JAMES MONTOYA,
Appellant.

Opinion
No. 20140504-CA
Filed July 7, 2017

Third District Court, Salt Lake Department
The Honorable Deno G. Himonas
No. 101901835

Joel J. Kittrell and Kristina H. Ruedas, Attorneys
for Appellant

Sean D. Reyes and Kris C. Leonard, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGES
GREGORY K. ORME and DAVID N. MORTENSEN concurred.

ROTH, Judge:

¶1     Joshua James Montoya shot and killed Victim during a confrontation between the two in front of Montoya's residence where Victim and Victim's girlfriend (Girlfriend) had gone to drop off the three children she shared with Montoya for a weekend visit. Montoya appeals his jury conviction for murder, a first degree felony, and obstruction of justice, a second degree felony. We affirm.

BACKGROUND[1]

¶2    Montoya associated with gangs and gang members. Victim also associated with gangs and was by reputation a violent man known to have committed armed robberies. Substantial evidence of Victim's violent focus on Montoya was elicited at trial.

¶3    In September 2009, about six months before the March 2010 killing, Montoya had gone to Girlfriend's house at her invitation to discuss an issue regarding a credit card. Victim's relationship with Girlfriend had already begun, and he was at her house when Montoya arrived. While Montoya and Girlfriend were talking, Victim "punched [Montoya] in the back of the head" and fisticuffs ensued. Montoya then proceeded to leave the house, but Victim would not let it go. With a gun in his hand, he followed Montoya out of the house, lifted the gun, and told Montoya to "get the fuck out of there" or he would shoot him. Several months after this incident—a few weeks before Victim's death—Montoya heard from multiple sources that Victim had been telling people that he planned on shooting Montoya.

¶4    On the day of the killing, Girlfriend drove with Victim to drop her children off at Montoya's house for a weekend visit. Once they arrived, Montoya saw that Victim was in the car with Girlfriend and the children, and he "instantly got scared" because Victim "had been making threats that he was going to shoot [Montoya]." Montoya was further "scared" because Victim

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (citations and internal quotation marks omitted).

"was very angry and upset." Montoya and Victim began arguing at the curbside in front of Montoya's house, with Victim remaining in the vehicle and Montoya standing by the passenger's door—on the same side of the vehicle as Victim. The altercation escalated and culminated in Montoya shooting and killing Victim.

¶5     The State charged Montoya with murder and obstruction of justice. Just who had brought the gun to the encounter was a major source of contention at trial, with Montoya claiming that Victim had produced the gun and threatened him with it during the altercation and the State alleging that Montoya himself had brought the gun with him from the house.

¶6     Before trial, Montoya sought to admit evidence of another violent episode involving Victim, which had occurred about six months before his death (the apartment incident). Specifically, Montoya wanted to introduce evidence about an incident involving his cousin (Cousin), with whom Victim had been romantically involved. After Victim's relationship with Cousin ended, Victim went to her apartment in September 2009 and threatened her, purportedly over an ongoing dispute between Cousin and Girlfriend. Apparently to emphasize his concerns, Victim had fired a gun several times inside the apartment.

¶7     Montoya argued that this evidence was admissible pursuant to Utah Rule of Evidence 404(b) and that it would show (1) that Victim "prepared and planned to bring a handgun to a confrontation with [Montoya]" and (2) that Montoya reasonably believed that use of force was necessary to defend himself against Victim. The trial court denied the motion on the grounds that the evidence was not offered for a non-character purpose, the evidence was not relevant to show that the gun Victim possessed during the apartment incident was the same gun that killed him, and the potential for unfair prejudice substantially outweighed any probative value.

¶8 At trial, the parties disputed ownership of the gun that fired the fatal bullet, and Montoya presented his theory of self defense. He asserted that during the altercation, Victim, still seated in the vehicle, pulled out a gun and pointed it at Montoya. At this moment, according to Montoya, he tried to push the gun away, gained control of it in a struggle and then stumbled, hit the car door with his arm, and accidentally fired the gun, striking and killing Victim. The State, on the other hand, asserted that in the course of the altercation, Montoya pulled out a gun from his pocket and deliberately shot Victim. Montoya's DNA was found on the gun's grip, hammer, trigger, and cylinder. Victim's DNA was not found anywhere on the gun nor on any of the bullets. Although Montoya claimed he had fired the gun at close range in the course of a struggle, the medical examiner testified that he had not found any evidence of a close-range discharge.

¶9 The jury convicted Montoya on both counts. Montoya retained new counsel and moved for a new trial on the grounds that, inter alia, the court should have admitted evidence of the apartment incident and that Montoya's trial counsel provided ineffective assistance by failing to call a gang expert. The court denied the motion. Montoya timely appealed.

ISSUES AND STANDARDS OF REVIEW

¶10 Montoya first contends that the trial court wrongly denied his motion to admit evidence that, six months prior to his death, Victim had brought a gun to Cousin's apartment and fired it during an argument related to Girlfriend. We review a trial court's decision to exclude evidence under Utah Rule of Evidence 404(b) for abuse of discretion. *State v. Lucero*, 2014 UT 15, ¶ 11, 328 P.3d 841, *abrogated on other grounds by State v. Thornton*, 2017 UT 9, 391 P.3d 1016.

¶11 Montoya also challenges the trial court's denial of his motion for a new trial. "When reviewing a trial court's denial of a motion for a new trial, we will not reverse absent a clear abuse of discretion by the trial court." *State v. Pinder*, 2005 UT 15, ¶ 20, 114 P.3d 551 (citation and internal quotation marks omitted). "At the same time, however, we review the legal standards applied by the trial court in denying such a motion for correctness." *Id.* (citation and internal quotation marks omitted).

ANALYSIS

I. The Rule 404(b) Motion

¶12 Montoya contends that the trial court erred in denying his rule 404(b) motion to introduce evidence of the apartment incident.[2] Montoya argues that this evidence is a "[relevant] factor that the jury should have considered when evaluating [Montoya's] claim of self-defense." He also argues that the apartment incident "shows that [Victim] had a motive to bring a gun to [Montoya's] house and threaten him regarding his relationship with [Girlfriend], because that was his motivation in bringing a gun to [Cousin's] house."

¶13 "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the

---

2. The State argues that, on appeal, Montoya proffers the evidence of the apartment incident for a reason not presented to the trial court and therefore has failed to preserve his rule 404(b) argument. However, having carefully reviewed the record of the trial court proceedings, "we conclude the issue[] [was] sufficiently preserved." *See State v. Harris*, 2015 UT App 282, ¶ 7 n.6, 363 P.3d 555.

character." Utah R. Evid. 404(b)(1). However, this evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b)(2). We assume without deciding that evidence of the apartment incident was admissible. Nevertheless, we conclude that no prejudice resulted from any alleged error in excluding the evidence. *See State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992) ("[W]e can make an examination of the correctness of the trial court's . . . ruling [on the admissibility of evidence] unnecessary by finding that any error was harmless."); *see also State v. Bair*, 2012 UT App 106, ¶ 37, 275 P.3d 1050 (assuming without deciding that an error occurred because even if the defendant could demonstrate error, he could not demonstrate that the error prejudiced him).

¶14    "Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." Utah R. Crim. P. 30(a). "In circumstances where evidence should have been admitted, [the failure to admit it] is reviewed for harmless error." *State v. Sanchez*, 2016 UT App 189, ¶ 11, 380 P.3d 375 (citation and internal quotation marks omitted), *cert. granted*, 390 P.3d 719 (Utah 2017) *and* 390 P.3d 727 (Utah 2017). Exclusion is harmful if "'it is reasonably likely a different outcome would result with the introduction of the evidence and confidence in the verdict is undermined.'" *Id.* (quoting *State v. Colwell*, 2000 UT 8, ¶ 26, 994 P.2d 177).

¶15    Montoya argues that evidence of the apartment incident was necessary to undermine the State's theory that the gun that killed Victim was Montoya's because the evidence demonstrated that Victim had a motive to bring a gun to Montoya's house. Montoya also argues that evidence of the apartment incident was necessary to his theory of self defense to demonstrate that Montoya's actions were justified by a reasonable fear of Victim. But "'the mere possibility of a different outcome occurring [with]

the evidence is not enough.'" *See id.* ¶ 32 (additional internal quotation marks omitted) (quoting *State v. Thomas*, 1999 UT 2, ¶ 26, 974 P.2d 269). Montoya must demonstrate that the exclusion was "'so prejudicial and so substantial that, absent the error, it is reasonably probable that the result would have been more favorable for [him].'" *See id.* (quoting *Thomas*, 1999 UT 2, ¶ 26). Montoya has not met this burden.

¶16    Although the jury did not hear evidence of the apartment incident, there was substantial evidence presented at trial to support Montoya's contentions that Victim had a reason to bring a gun to Montoya's house and that Montoya had a reasonable fear that Victim meant to do him serious harm. For instance, witnesses testified that Victim associated with gangs, that he had a reputation for violence, and that he was known to have committed armed robberies. Further, the jury heard about an incident six months before Victim's death in which Victim had started a fight with Montoya by "punch[ing Montoya] in the back of the head" because he thought that Montoya was "getting mad at" Girlfriend. Victim then followed Montoya out of Girlfriend's house, pulled out a gun, pointed it at Montoya, and told him to "get the fuck out of there" or he would shoot him. Moreover, the jury was presented with evidence that within weeks of Victim's death, Montoya had heard from several people that Victim had expressed an intention to shoot him, and Montoya testified that Victim was "known to be violent and carry guns." Girlfriend testified that Victim had told her he had a gun in his possession as late as two days before the shooting, though she said he claimed he had disposed of it.

¶17    Thus, the evidence Montoya presented at trial provided substantial support for his theory that Victim had a motive to bring a gun to Montoya's house on the day Victim died. And the admitted evidence was significantly more supportive of his theory than the excluded evidence because it focused specifically on Victim's relationship with and threats of violence against

Montoya rather than on Victim's relationship with Girlfriend and Cousin. The admitted evidence also supported Montoya's claim that he acted in lawful self defense, that is, with a reasonable belief that deadly force was necessary to prevent death or serious bodily injury from Victim's imminent use of unlawful force unlike the evidence of the apartment incident. *See* Utah Code Ann. § 76-2-402 (LexisNexis 2012). Thus, the jury had already heard the strongest evidence in support of Montoya's theory of self defense: that Victim had previously pulled a gun on Montoya and directly threatened to shoot him over a dispute with Girlfriend, and that Victim had subsequently warned their mutual acquaintances that he planned to shoot Montoya.

¶18   It "'is the exclusive function of the jury to weigh the evidence and to determine the credibility of the witnesses.'" *State v. Davis*, 2014 UT App 77, ¶ 4, 324 P.3d 678 (quoting *State v. Booker*, 709 P.2d 342, 345 (Utah 1985)). It is apparent from the verdict that the jury did not believe Montoya's version of the events that led to Victim's death. And, given the evidence that the jury did hear about Victim's violent nature in general, his particular animus towards Montoya in the context of the relationship of both men to Girlfriend, his attack on Montoya and his threats to kill him, and his recent possession of a gun, we are not persuaded that adding the apartment incident to the mix would have tilted the jury's view of either Montoya's credibility or the circumstances of Victim's death in Montoya's favor. In other words, we are not persuaded that with the incremental addition of the apartment incident, it is likely that "'the result would have been more favorable for [Montoya].'" *See Sanchez*, 2016 UT App 189, ¶ 32 (quoting *Thomas*, 1999 UT 2, ¶ 26).

¶19   Accordingly, because Montoya has not shown that his defense was prejudiced by the court's decision to exclude evidence of the apartment incident, he has not persuaded us that any error in that decision warrants remand for a new proceeding.

II. Motion for a New Trial

¶20 Montoya next contends that the trial court abused its discretion by denying his motion for a new trial. Montoya's motion asserted several grounds for relief, but he challenges the court's denial on only two of those grounds.

¶21 First, Montoya argues that the court erred in not allowing him to introduce evidence of the apartment incident at trial and "failed to correct this error when it denied [Montoya's] motion for a new trial on this issue." Our conclusion that any alleged error in excluding this evidence was harmless is also dispositive of Montoya's contention that the trial court abused its discretion in denying his motion for a new trial on this issue. A trial court may "grant a new trial in the interest of justice if there is any error or impropriety which had a substantial adverse effect upon the rights of a party." Utah R. Crim. P. 24(a). A new trial is not necessary, however, where an error is "'sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings.'" *State v. Fairchild*, 2016 UT App 205, ¶ 17, 385 P.3d 696 (quoting *State v. Verde*, 770 P.2d 116, 120 (Utah 1989)). In other words, "a new trial is not merited where [an] error[] [is] harmless." *Id.* Because we have already concluded that any alleged error in excluding evidence of the apartment incident was harmless, the trial court did not abuse its discretion in denying Montoya's motion for a new trial on this basis. *See id.* ¶ 25.

¶22 The second basis for Montoya's new trial motion was his contention that trial counsel's failure to call a gang expert to testify at trial amounted to ineffective assistance of counsel. Montoya argues that the court erred in denying his motion for a new trial on this issue because a gang expert "could have provided evidence demonstrating [Girlfriend's] reasons to testify

falsely, which would have affected her credibility before the jury."

¶23 To succeed on a claim of ineffective assistance of counsel, a defendant must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Nelson*, 2015 UT 62, ¶ 12, 355 P.3d 1031. To establish that trial counsel rendered deficient performance, a defendant must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and internal quotation marks omitted). "[T]he question of deficient performance is not whether some strategy other than the one that counsel employed looks superior given the actual results of trial. It is whether a reasonable, competent lawyer could have chosen the strategy that was employed in the real-time context of trial." *Nelson*, 2015 UT 62, ¶ 14 (citation and internal quotation marks omitted). And to demonstrate prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶24 In denying Montoya's new trial motion, the court concluded that counsel had "a legitimate, sound, tactical reason for [the] decision not to call a gang expert," and that there was "no prejudice arising from that decision, given the gang evidence that was, in fact, introduced." We agree with the trial court.

¶25 Under the circumstances, counsel's decision not to call a gang expert to testify at trial can "be considered sound trial strategy." *See id.* at 689 (citation and internal quotation marks omitted). Montoya's trial counsel expressed concern about "allowing the trial to devolve into one that was simply about

gangs, or who was more involved in a gang," because both Montoya and Victim associated with gangs and gang members. Trial counsel did not want the trial to "evolve into a gang trial," and decided not to call a gang expert for that reason. To avoid drawing additional attention to both Montoya and Victim's gang involvement, "a reasonable, competent lawyer could have chosen the strategy that was employed in the real-time context of trial," deciding that, in light of the other evidence available regarding Girlfriend's motivations to testify falsely, it was on balance better not to call a gang expert. *See Nelson*, 2015 UT 62, ¶ 14 (citation and internal quotation marks omitted).

¶26    In this regard, Montoya's trial counsel would have recognized that there was already a great deal of evidence that would inevitably come in at trial about both Montoya's and Victim's gang associations. And trial counsel plausibly could have concluded that specific testimony about fears of retaliation held by Girlfriend and others would be naturally reinforced by the gang context without further emphasizing it through the testimony of a gang expert. Thus, in this case, as in many others, the calculations of counsel in weighing the pros and cons of one strategy over another is, in essence, a judgment about what is most likely to work to the client's benefit in a complex trial process that requires that many choices be made. *See State v. Franco*, 2012 UT App 200, ¶ 10, 283 P.3d 1004 ("A decision by counsel that reasonably weighs the risks and benefits of available strategic approaches before choosing one as preferable to others cannot support a claim that counsel was deficient in either strategy or performance, even if the approach did not lead to the desired result."). Accordingly, Montoya's trial counsel did not perform deficiently. *See Strickland*, 466 U.S. at 687. The evidence at trial seems to support the judgment trial counsel made here—a judgment reinforced by the fact that Montoya has not demonstrated any prejudice from his counsel's decision not to call a gang expert.

¶27    Montoya argues that a gang expert "would have testified regarding the culture of retaliation in gangs and the effect it has on witnesses testifying in court" and would have undermined the credibility of Girlfriend's damaging testimony. But while the jury did not hear from a gang expert, it did hear testimony that both Victim and Montoya were associated with gangs and that threats and fear of retaliation were at play in the aftermath of Victim's death—specifically that Victim's family threatened to retaliate against Montoya after he killed Victim and that Girlfriend herself was fearful of retaliation.

¶28    The jury heard evidence throughout the trial about both Montoya's and Victim's gang associations. More specifically, the jury heard substantial evidence that Girlfriend feared retaliation from Victim's family and associates and had other concerns that could have influenced her willingness to testify truthfully about the nature of Montoya's role in the killing. For instance, Cousin testified that Girlfriend had "made comments before" to Cousin about being "afraid of [Victim and] his family." Defense counsel then played an audio recording of a phone call between Cousin and Girlfriend after the shooting on the night of Victim's death. In the conversation, Girlfriend stated that one of Victim's family members told her something that expressed the intensity of their hostility toward Montoya: "I know that's . . . the father of your kids but he's fucking dead. . . . If [the police] don't catch him he's fucking dead." And Cousin explained that after Victim died, Girlfriend had seen Victim's family and then told Cousin in a separate conversation, "I'm scared I have to testify when this comes up and I don't know what's going to happen." Cousin also testified that because she is related to Montoya, the police "told [her] ex-husband that there's going to be retaliation" from those associated with Victim and that police "think that [Cousin] and [Montoya's sister] would be a target because [they're] so close" to Montoya. And finally, in closing argument, Montoya's trial counsel suggested gang retaliation as a motive for Girlfriend to lie about whose gun fired the fatal bullet:

> She has to face [Victim's] family and his associates
> in this audience and say, no, he wasn't a good guy,
> yes he brought the gun. She's not going to say that.
> She has every incentive. Look[,] we heard about
> the fear. We heard about the gangs. These are the
> same people she's going to have to go back and
> face tomorrow. You don't, but she does consider
> [her] best interest. She has to go back to Kearns.

¶29     Montoya argues that "expert testimony regarding gang culture, specifically with respect to its impact on witnesses and their testimony, should have been presented in this case," and that this testimony "would have affected [Girlfriend's] credibility before the jury." But, as we have discussed, the jury did hear testimony that Cousin and Girlfriend both feared retaliation from Victim's family and associates, and the jury heard trial counsel's closing argument that strongly invoked fear of gang retaliation as a motive for Girlfriend to lie in her trial testimony. Given the evidence here, the intensity of the pressure on Girlfriend to craft a story favorable to Victim and damning to Montoya would not have been lost on the jury, even without a gang expert. And trial counsel strongly emphasized this point in closing argument: "[Girlfriend] has every reason to lie and she told you she lies . . . . [She] is an admitted liar. She admitted to you that she lies." *Cf. State v. Lyman*, 2001 UT App 67U, para. 4 (concluding that no prejudice resulted from defense counsel's alleged failure to call additional witnesses when the jury heard evidence from a witness "concerning [the] exact issue and further evidence would have been cumulative").

¶30     Thus, Montoya has failed to demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

¶31   Accordingly, we conclude that the trial court correctly determined that Montoya failed to satisfy both prongs of the ineffective assistance of counsel inquiry, and therefore did not abuse its discretion in denying Montoya's motion for a new trial on this issue. *See State v. Pinder*, 2005 UT 15, ¶ 20, 114 P.3d 551.

## CONCLUSION

¶32   For the foregoing reasons, we affirm the judgment of the trial court.

_____